Filed 9/22/14; pub. order 10/21/14 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| MARK S. JONES et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> WACHOVIA BANK et al., <br><br> Defendants and Respondents. | H038382 <br> (Santa Clara County <br> Super. Ct. No. 1-09-CV147777) |

Plaintiffs Mark and Roberta Jones appeal from a judgment of dismissal entered after the trial court granted defendant Wachovia's[1] motion for summary judgment. Plaintiffs seek damages under the doctrine of promissory estoppel after losing their home in a foreclosure sale which they understood from a phone conversation with the bank would be postponed to a date 10 days after the actual sale date. Because we conclude that plaintiffs have failed to establish a triable issue of material fact regarding detrimental reliance or injury under the doctrine of promissory estoppel, we will affirm the judgment.

## I. TRIAL COURT PROCEEDINGS

### A. THE FIRST AMENDED COMPLAINT

Plaintiffs sued Wachovia over the foreclosure on their San Jose home. Count three of the first amended complaint-captioned "Damages From Breach of Contract

---

[1] Plaintiffs sued Wachovia Mortgage, FSB and Wells Fargo Bank. In 2009, Wachovia Mortgage, FSB merged with Wells Fargo Bank, N.A. and became Wachovia Mortgage, a division of Wells Fargo Bank, N.A. We refer to defendants collectively as "Wachovia" or "bank" throughout the opinion.

Against WACHOVIA and WELLS FARGO BANK"-alleged that the bank breached an agreement to postpone the trustee sale and, by reason of that breach, plaintiffs lost their equity in the property.[2]  Plaintiffs alleged that in an April 15, 2009 telephone conversation with Mark Jones, a Wachovia representative agreed to postpone the trustee sale to June 18, 2009.  Plaintiffs further alleged they "had ready funds available to cure the outstanding default within the time prescribed by law prior to the June 18, 2009, postponed date of sale, and plaintiffs made preparations to timely submit said funds to WACHOVIA.  Plaintiffs were prevented from doing so by the advancement of the trustee sale date to June 8, 2009."  Plaintiffs also challenged the trustee sale price of $420,000 as grossly disproportionate to the value of the home, and claimed damages in lost equity.

## B.    WACHOVIA'S DEMURRER

Wachovia demurred, arguing that plaintiffs failed to plead the elements of a breach of contract claim and, to the extent any agreement was oral, it was barred under both the statute of frauds and the terms of the deed of trust.  Plaintiffs responded that the third cause of action was for breach of contract *and* promissory estoppel, and further that the bank's oral promise was enforceable under the doctrine of promissory estoppel.  Plaintiffs argued further that Civil Code section 2924g, subdivision (c) provided for the verbal agreement to postpone a sale.  The trial court overruled defendants' demurrer to count three without discussion.

## C.    WACHOVIA'S MOTION FOR SUMMARY JUDGMENT

Wachovia moved for summary judgment on count three, advancing several arguments directed at the breach of contract claim.  Wachovia also argued that plaintiffs did not properly plead promissory estoppel, but even if they had they failed to show a

---

[2]  Counts one and two of the first amended complaint sought to set aside the trustee's sale and cancel the trustee's deed.  These were dismissed on demurrer and are not challenged on appeal.

promise, detrimental reliance, or injury. Wachovia relied on the following undisputed facts:

On July 13, 2006, plaintiffs borrowed $495,000 from Wachovia's predecessor, World Savings Bank, FSB. The loan was secured by a first deed of trust recorded against plaintiffs' home. On June 26, 2008, a notice of default issued by Cal-Western Reconveyance Corporation (Cal-Western) was recorded in the Santa Clara County Recorder's Office showing $9,549 in mortgage arrears.[3] After receiving notice of default, plaintiffs and Wachovia reached a forbearance agreement requiring plaintiffs to pay $10,000 and bring the loan current by October 27, 2008. Plaintiffs made the $10,000 payment but never brought the loan current.

On January 13, 2009, Cal-Western recorded a notice of trustee sale of plaintiffs' home. The notice set the sale, by public auction at the Santa Clara County Courthouse, for January 29, 2009. Wachovia postponed the sale three times at the request of plaintiffs. At the scheduled January 29 sale, Cal-Western's auctioneer announced a postponement to March 3, 2009, and memorialized the postponement in a written certificate. Plaintiffs did not attend the January 29 sale, but Mark Jones contacted Cal-Western by phone to confirm the postponement.

At the March 3, 2009 sale, the auctioneer announced the second postponement to April 17, 2009, and memorialized the postponement in a written certificate. Mark Jones contacted Cal-Western multiple times through its automated phone system to confirm that postponement.

According to plaintiffs, during an April 15, 2009 telephone call with Wachovia, Mark Jones was given a new sale date of June 18, 2009. But at the April 17 sale, the auctioneer announced the postponement to June 8, 2009 and memorialized that date in

---

[3] Cal-Western was retained by Wachovia as its agent and substitute trustee under the deed of trust.

writing. Plaintiffs did not confirm the new sale date with Cal-Western, despite having done so for the previous two postponements. Wachovia's records reflect each postponement, with the April 17 sale postponed to June 8, not June 18. Each postponed sale date, including the June 8 date, was publically available online and through Cal-Western's automated telephone system.

Plaintiffs requested and received reinstatement quotes from Wachovia in September 2008, October 2008, and January 2009. Aside from the $10,000 forbearance payment made in September 2008 with the understanding that plaintiffs would pay the balance of their default two months later, plaintiffs made no other payments to bring their loan current. Although plaintiffs had no funds or assets in hand to cure the loan default, they would have borrowed funds from their accountant and friend, Roger Marlin, to cure the default before June 18. Marlin had loaned plaintiffs $10,000 for the forbearance payment, which plaintiffs had not paid back, and he and Mark Jones had discussed another loan to cure the default. But plaintiffs did not formally seek money from Marlin, and their discussions were not reduced to a formal agreement. Plaintiffs planned to contact Wachovia three or four days before June 18 to seek another postponement.

Third party purchaser Adrian Wunderman bought plaintiffs' home at the June 8 trustee sale for $420,000. At that time plaintiffs' outstanding debt was $570,147. Seeking the highest sales price possible, Wunderman, a local real estate broker, listed the property in August 2009 for $589,950, but he reduced the price by $30,000 after receiving no purchase offers. According to Wunderman, the house was run down with no significant upgrades from its original condition. Wunderman undertook cosmetic clean-up before selling the house, including the removal of stained, flea-infested carpet. Wunderman received one offer and sold the property for $555,000 on October 22, 2009. Plaintiffs were living next door to the foreclosed property when it was listed for sale. A "for sale" sign was posted in the front yard and the listing was available online.

4

Wunderman would have accepted an offer from plaintiffs to repurchase the home for any amount exceeding $555,000.

### D.   PLAINTIFFS' OPPOSITION TO SUMMARY JUDGMENT

Pursuing their third cause of action based on a promissory estoppel theory, plaintiffs argued that they incurred detriment because, by Wachovia's "breach of their promise and advancing the sale date by a period of ten days to June 8, the plaintiffs were prevented from taking steps to reinstate the loan with [the bank], thereby losing a significant equity in their home, as well as incurring a significant state and federal income tax liability by reason of cancellation of debt income."

Defending their damages claim, plaintiffs submitted a declaration from Gary Nobile, a realtor who opined that the fair market value of the property in June 2009 was $695,000, and a declaration from Mark Jones valuing the home at over $700,000 at the time of the trustee sale. Jones also opined that the $555,000 October 2009 selling price was substantially below the property's market value. Plaintiffs also provided a declaration from Roger Marlin who opined that plaintiffs incurred over $66,000 in cancellation of debt tax liability. The court sustained Wachovia's objections to Marlin's tax liability figure as irrelevant because no tax damages were alleged in the first amended complaint. The court also sustained objections to Nobile's $695,000 fair market value opinion and Jones's opinion that the home was valued at $700,000 and undersold at $555,000.

Plaintiffs responded to defendants' lack of harm argument by asserting that they had the right to pay off the loan up to the trustee sale, and that they were prepared to pay off not only the loan deficiency but the loan *in full* before June 18. Even though plaintiffs failed to plead their willingness and ability to pay the loan in full, and even though that course of action was not explored during discovery, Mark Jones explained in his declaration supporting plaintiffs' opposition to summary judgment that he was prepared to borrow funds from Marlin to pay the entire amount of the loan-in the range of

$570,000-if, at the final hour, Wachovia refused to postpone the June 18 sale. Marlin asserted by declaration that he had told Jones he would do whatever was necessary to save plaintiffs' home from foreclosure. Marlin represented further that he had the ability to pay off plaintiffs' loan in full in June 2009 and would have done so on 48-hour notice had Jones asked him.

Jones explained by declaration that plaintiffs intended to seek another postponement from the bank before resorting to Marlin's offer, and they planned to make that request just three or four days before June 18 because Wachovia had advised them to wait until the scheduled sale date was a few days away before seeking another postponement. Jones felt it was unnecessary to confirm the June 18 sale date with Cal-Western since Wachovia had accurately represented the two earlier postponements.

### E. TRIAL COURT'S RULING

The trial court granted summary judgment to defendants, concluding that no written agreement was breached and that any alleged oral agreement was not only barred by the statute of frauds but also failed for lack of consideration. The court rejected plaintiffs' promissory estoppel claim on alternative grounds: A promissory estoppel claim was not pleaded in the first amended complaint, and plaintiffs failed to demonstrate estoppel sufficient to overcome the statute of frauds. The court concluded that plaintiffs failed to plead or show a material change in position resulting in substantial hardship amounting to unconscionable injury.

## II. LEGAL PRINCIPLES

### A. NON-JUDICIAL FORECLOSURE

In California, a real property loan generally involves a promissory note secured by a deed of trust in which the debtor (a home buyer) is the trustor, the creditor (a lending institution) is the beneficiary, and a neutral third party serves as the trustee. (*Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428, 438.) When a debtor defaults on a loan, the creditor has the right to invoke the power of sale provided by the deed of trust. (Civ.

6

Code, § 2924, subd. (a).)  Civil Code sections 2924a through 2924k provide a comprehensive and exhaustive framework to exercise the power of sale contained in the deed of trust.  (*Nguyen*, at p. 438; *Residential Capital v. Cal-Western Reconveyance Corp*. (2003) 108 Cal.App.4th 807, 821.)

The power of sale in a non-judicial foreclosure procedure is exercised by the trustee.  (*Nguyen*, *supra*, 105 Cal.App.4th at p. 440.)  The trustee must provide the debtor with written notice of default followed by written notice of sale.  (Civ. Code, §§ 2924; 2924.3; 2924b, subds. (b), (f).)  The trustee is required to postpone a sale under certain circumstances, including "mutual agreement [of the trustor and the beneficiary], whether oral or in writing."  (Civ. Code, § 2924g, subd. (c)(1)(C).)  When the trustee postpones a sale date, it provides notice "by public declaration … at the time and place for the last appointed sale."  (§ 2924g, subd. (d).)  The public declaration "set[s] forth the new date, time, and place of sale[.]"  (*Ibid*.)  No other notice of postponement is required.  (*Ibid*.)

Section 2924g was enacted in 1972, and originally provided for the postponement of a trustee sale at the discretion of the trustee or the direction of the lender.  (Stats. 1972, ch. 1056, p. 1943, § 4.)  The statute was amended in 1979 to require postponement in other circumstances, including "the mutual agreement, whether oral or in writing, of any trustor and any beneficiary[.]"  (Stat. 1979, ch. 1015, p. 3476, § 4.)

**B.** **THE STATUTE OF FRAUDS AS IT RELATES TO AN ORAL AGREEMENT TO POSTPONE A TRUSTEE SALE**

The statute of frauds is codified in Civil Code sections 1624 (governing contracts) and 1698 (governing modifications to contracts).  A deed of trust is covered by the statute of frauds (Civ. Code, § 1624, subd. (a)(6)), and an agreement to modify a deed of trust is governed by Civil Code section 1698 (hereinafter "section 1698").  (*Stafford v. Clinard* (1948) 87 Cal.App.2d 480, 481 ["An agreement to postpone a valid sale of property beyond the date when said property may be sold under and according to the terms of a trust deed obviously is an agreement to alter the terms of the instrument."]; *Karlsen v.*

7

*American Sav. & Loan Assn.* (1971) 15 Cal.App.3d 112, 121 [same].) In *Raedeke v. Gibralter Sav. & Loan Assn.* (1974) 10 Cal.3d 665, 673 (*Raedeke*) our high court explained that "a gratuitous oral promise to postpone a sale of property pursuant to the terms of a trust deed ordinarily would be unenforceable under section 1698." This is because the oral promise had not been executed by the parties, as required by section 1698.[4]

Section 1698, subdivision (d) provides that that section does not preclude "in an appropriate case the application of [several] rules of law," including estoppel. (§ 1698, subd. (d).) Subdivision (d) was included in the 1976 legislation to clarify that section 1698's revision would not affect related legal principles recognized by then-existing case law. (13 Cal.L.Rev.Comm.Reports 301, 2129 (1975).)

To estop a defendant from asserting the statute of frauds, a plaintiff must show unconscionable injury or unjust enrichment if the promise is not enforced. (*Estate of Baglione* (1966) 65 Cal.2d 192, 197.) " 'The doctrine of estoppel has been applied where an unconscionable injury would result from denying enforcement after one party has been induced to make a serious change of position in reliance on the contract or where unjust enrichment would result if a party who has received the benefits of the other's performance were allowed to invoke the statute.' " (*Id*. at pp. 197-198.)

---

[4] Although *Raedeke* was decided under former section 1698, which provided "[a] contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise" (former § 1698, enacted 1872, amended by Code. Am. 1873-74, ch. 612, § 193, p. 243), it has equal application to the current version of section 1698, enacted in 1976, which continues to recognize that "a contract in writing may be modified by an oral agreement to the extent that the oral agreement is executed by the parties." (§ 1698, subd. (b); added by Stats. 1976, ch. 109, § 4, p. 171.)

## C.	PROMISSORY ESTOPPEL

California has adopted the Restatement Second of Contracts doctrine of promissory estoppel:  " 'A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee … and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.' " (*Kajima/Ray Wilson v. Los Angeles County Metropolitan Transportation Authority* (2000) 23 Cal.4th 305, 310, citing Rest. 2d Contracts, § 90.)  The doctrine " 'employs equitable principles to satisfy the requirement that consideration must be given in exchange for the promise to be enforced.' " (*Ibid*.)  Promissory estoppel binds a promissor "when he should reasonably expect a substantial change of position, either by act or forbearance, in reliance on his promise, if justice can be avoided only by its enforcement." (*Garcia v. World Savings, FSB* (2010) 183 Cal.App.4th 1031, 1041 (*Garcia*).)  " ' "The vital principle is that he who by his language or conduct leads another to do what he would not otherwise have done shall not subject such person to loss or injury by disappointing the expectations upon which he acted." ' " (*Ibid*.)  Courts are given wide discretion in its application.  (*U.S. Ecology, Inc. v. State of California* (2005) 129 Cal.App.4th 887, 902.)  "The elements of a promissory estoppel claim are '(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance.' [Citation.]" (*Id*. at p. 901.)

## III.  STANDARD OF REVIEW

Summary judgment is warranted when there are no triable issues of any material facts and the moving party is entitled to judgment as a matter of law.  (Code Civ. Proc., § 437c, subd. (c); *Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1002-1003.)  We review an order granting a motion for summary judgment de novo.  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860 (*Aguilar*).)

9

In performing our independent review of a defendant's summary judgment motion, "we identify the issues framed by the pleadings since it is these allegations to which the motion must respond … ." (*AARTS Productions, Inc. v. Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064 (*AARTS Productions*).  A defendant moving for summary judgment has the burden of showing that a cause of action lacks merit because one or more elements of the cause of action cannot be established or there is a complete defense to that cause of action.  (Code Civ. Proc., § 437c, subd. (o); *Aguilar, supra,* 25 Cal.4th at p. 850.)  If a defendant's moving papers make a prima facie showing that justifies a judgment in its favor, the burden of production shifts to the plaintiff to make a prima facie showing of the existence of a triable issue of material fact.  (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar* at p. 850.)

In determining whether the parties have met their respective burdens, we must " ' consider all of the evidence' and 'all' of the 'inferences' reasonably drawn therefrom [citation] and must view such evidence [citations] and such inferences [citations] in the light most favorable to the opposing party." (*Aguilar*, *supra*, 25 Cal.4th at p. 843.)  A triable issue of material fact exists "if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Id*. at p. 850, fn. omitted.)  Thus, a party "cannot avoid summary judgment by asserting facts based on mere speculation and conjecture, but instead must produce admissible evidence raising a triable issue of fact." (*LaChapelle v. Toyota Motor Credit Corp.* (2002) 102 Cal.App.4th 977, 981.)  Further, "counter-declarations, which create immaterial factual conflicts outside the scope of the pleadings[]" cannot defeat a summary judgment motion; "counter-declarations are no substitute for amended pleadings." (*AARTS Productions*, *supra*, 179 Cal.App.3d at p. 1065.)

# IV.  DISCUSSION

## A.    DETRIMENTAL RELIANCE

Plaintiffs argue that the trial court erred by concluding that they failed to show a triable issue of fact regarding detrimental reliance.  According to plaintiffs, "[i]f [they] had been advised by WACHOVIA that the actual sale date was June 8, 2009, then plaintiffs would have had sufficient time to obtain the funds to pay off WACHOVIA'S loan."  Because Wachovia "lull[ed]" plaintiffs into a belief that they had more time to cure the deficiency, plaintiffs lost the opportunity to cure their default before the actual June 8 sale date.  Plaintiffs rely on *Wade v. Markwell & Co*. (1953) 118 Cal.App.2d 410 (*Wade*) and *Garcia*, *supra*, 183 Cal.App.4th 1031 to support their argument.

In *Wade*, a defense appeal from a conversion judgment, the plaintiff gave the defendant a $3,750 mink coat as security for a 30 day $300 loan.  "We suggest that you phone us 24 hours in advance of redemption" was written on the envelope containing the written pledge agreement.  (*Wade, supra,* 118 Cal.App.2d at p. 422.)  The lender continued to charge interest on the loan after the thirty-day redemption period expired, and several months later sent the coat owner written notice requesting that she repay the loan and reclaim the coat.  (*Id*. at p. 417.)  The coat owner immediately informed the lender by telephone that she intended to redeem her coat and asked whether 24-hour notice was necessary.  (*Id*. at p. 423.)  The lender told her such notice was required and she could make her payment and redeem her coat any time within the following week.  When she presented herself at the lender's office within that time period, she was told her coat had been sold and her account closed.  (*Ibid*.)

*Wade* rejected the defendant lender's argument that the pledge agreement had expired and, without consideration, could not be altered orally by the representation that the coat would be available to claim the following week.  Invoking promissory estoppel, *Wade* explained that the coat owner, who was prepared to reclaim her coat, "was induced by defendant's representations to forbear from immediately redeeming under the

11

assurance that it would be held for her for at least another week," and that "plaintiff refrained from exercising her right to redeem in reliance on a promise calculated to induce such forbearance." (*Wade*, *supra*, 118 Cal.App.2d at pp. 419-420.)

*Wade* further concluded that the facts of that case gave rise to an equitable estoppel against applying section 1698 to prevent enforcement of the lender's oral modification to the pledge agreement. (*Wade*, *supra*, 118 Cal.App.2d at p. 421.) Specifically, the coat owner was ready to redeem and was misled into believing she had an extra week in which to do so. (*Ibid*.) In essence, she was induced by the lender's oral representations not to exercise her rights under the pledge agreement while performance was still possible. (*Ibid*.)

In *Garcia*, a lender foreclosed on homeowners' property after verbally assuring the homeowners that the trustee sale would not occur as scheduled. (*Garcia*, *supra*, 183 Cal.App.4th at pp. 1035-1036.) The homeowners were in the process of refinancing another property to obtain funds to cure the loan deficiency, and the lender's agent told the homeowners three days before the scheduled sale that the sale would not proceed if the lender knew the refinance would be closing the following week. (*Id*. at p. 1035.) The lender had agreed to an earlier postponement after the homeowners had obtained a written conditional loan approval on the refinance. The day before the scheduled trustee sale, the homeowners informed the lender's agents in several voice messages that the refinance would not close for another week. The refinance closed the following Friday, and, when the lender rejected their reinstatement payment, the homeowners learned that the foreclosure sale had proceeded as scheduled. (*Id*. at p. 1036.)

Reversing summary judgment in favor of the lender on the homeowners' promissory estoppel claim, *Garcia* concluded that the homeowners' "actions in procuring a high cost, high interest loan by using other property they owned as security were sufficient to support detrimental reliance[.]" (*Garcia*, *supra*, 183 Cal.App.4th at p.

12

1041.)  *Garcia* further noted that neither section 1698 nor the statute of frauds would defeat the homeowners' promissory estoppel claim.  (*Id*. at p. 1040, fn. 10.)

Wachovia responds that plaintiffs failed to plead or produce evidence establishing detrimental reliance.  The bank argues that plaintiffs showed no substantial change in position based on the June 18 sale date.  Plaintiffs produced no evidence showing that they refrained from bringing their loan current in reliance on the June 18 sale date because they had no ability to do so.  According to Wachovia, plaintiffs did nothing to substantially change their position before their home was sold, and they intended to do nothing other than to seek another postponement a few days before June 18.

We agree that plaintiffs have failed to show any triable issue regarding detrimental reliance.  Plaintiffs have failed to show that the bank reasonably expected to induce *inaction* by the postponement to the June 18 date.  In contrast to *Wade*, where the owner, prepared to redeem her coat, was induced to forbear based on the lender's representation that it would hold her coat for another week, plaintiffs were not induced to forebear any paying of their deficiency by the postponement of the trustee sale.  Plaintiffs were in default on their loan and, if anything, the postponement was an inducement to cure, not to remain in default.  Even if the postponement were an inducement to forebear payment, plaintiffs have failed to show a substantial change in position based on the postponement.  (*Garcia*, *supra*, 183 Cal.App.4th at p. 1041.)  Indeed, their position remained substantially the same after the third postponement.

Plaintiffs are in a significantly different position than the homeowners in *Garcia*, who were reasonably induced by a series of postponements to borrow funds to cure their default.  The *Garcia* homeowners relied to their detriment on the lender's oral promise to continue to refrain from foreclosing when they completed a high cost refinance on another property to secure funds to cure their default.  In stark contrast, plaintiffs took no similar action and simply hoped that Wachovia would agree to further postponements and that a loan modification might eventually become available.

13

Plaintiffs presented a new theory in their opposition to summary judgment that they had arranged with their friend Roger Marlin to pay the entire amount of their loan in the event the bank refused to postpone the sale a fourth time. We agree with Wachovia that this theory must be disregarded because it is was not pleaded in the first amended complaint. (*AARTS Productions*, *supra*, 179 Cal.App.3d at p. 1065 [belated assertions outside the scope of the pleadings are immaterial].) At oral argument plaintiffs urged that the reference in the governing complaint to curing the "outstanding default" could be read to include paying off the loan in full. Assuming for the sake of argument that such language is ambiguous, the allegation would fail for lack of specificity. (*Smith v. City and County of San Francisco* (1990) 225 Cal.App.3d 38, 48.) But even if we were to consider these facts, they do not establish detrimental reliance. An informal agreement to borrow money from a friend is not a change of position, much less a substantial change of position needed to establish an estoppel. Had the sale actually been scheduled for June 18 and had the bank refused a further postponement, that refusal may have induced plaintiffs to actually borrow funds from Marlin at that time to pay the loan in full. But plaintiffs' decision to do nothing before that time reflects no substantial change in position and fails to establish detrimental reliance.

The facts of this case also are notably different from those in *Aceves v. U.S. Bank N.A.* (2011) 192 Cal.App.4th 218, 222 (*Aceves*), where the court concluded that a homeowner's complaint stated a cause of action for promissory estoppel. The *Aceves* homeowner could no longer afford her mortgage and filed for chapter 7 bankruptcy. (*Id.* at p. 221.) The homeowner intended to convert her chapter 7 bankruptcy to a chapter 13 proceeding, to enlist her husband's financial assistance to cure the default, and have her loan reinstated. (*Ibid.*) In reliance on the bank's promise to work with her on a loan reinstatement, she did not oppose the bank's motion to lift the automatic bankruptcy stay, which allowed the foreclosure to proceed. (*Ibid.*) Instead of working with the homeowner in an attempt to modify and reinstate her loan, the bank foreclosed on her

home.  (*Ibid*.)  Unlike the homeowners in *Aceves*, plaintiffs did not relinquish any legal right to stay the bank's foreclosure.

**B.    INJURY**

Wachovia is entitled to summary judgment for the additional reason that plaintiffs failed to present sufficient evidence of injury (*U.S. Ecology, Inc. v. State of California*, *supra*, 129 Cal.App.4th at p. 901), much less the unconscionable injury needed to avoid application of the statute of frauds.  (*Estate of Baglione*, *supra*, 65 Cal.2d at p. 197.)[5]  In the first amended complaint, plaintiffs alleged they were prevented from "cur[ing] the outstanding default within the time prescribed by law prior to the June 18, 2009, postponed date of sale" because the trustee sale occurred 10 days earlier than promised. In support of its motion for summary judgment, Wachovia made a showing that the June 8 sale did not cause plaintiffs injury because plaintiffs in fact would not have cured their default had the sale actually been conducted on June 18.  The evidence established that Mark Jones intended to contact the bank three to four days before June 18 to request another postponement and, in the event Wachovia refused, Jones would have cured the default at that time.  But plaintiffs could not have cured their default three to four days before the sale because the statutory right to cure would have expired five business days before the sale date.  (Civ. Code, § 2924c, subd. (e).)

In an effort to overcome Wachovia's showing, plaintiffs countered by declaration in support of their opposition to summary judgment that they were prepared to pay the *full* loan amount, a recourse that remained available under the statute.  (Civ. Code, § 2924c, subd. (b)(1).)  Plaintiffs' belated assertion is immaterial because it is outside the

---

[5]  Plaintiffs cite to Civil Code section 2924g as allowing for an oral postponement of sale.  Section 2924g requires the trustee to postpone a foreclosure sale in several circumstances, including when the lender and borrower orally agree to a postponement. Section 2924g does not speak to the enforceability of an oral agreement between a lender and a borrower to postpone a sale, and we reject any suggestion that that section undermines the applicability of section 1698.

15

scope of the pleadings. (*AARTS Productions*, *supra*, 179 Cal.App.3d at p. 1065.) Plaintiffs' complaint alleges harm caused by the inability to cure their default, not by the inability to pay off their loan in full. We are required to review Wachovia's motion in the context of plaintiffs' pleadings. Because of the material distinction between the two remedies and because plaintiffs did not plead injury by losing their right to pay the loan in full by June 18, plaintiffs have failed to raise a triable issue of fact regarding injury.

Plaintiffs also have failed to establish damages. (*Aceves*, *supra*, 192 Cal.App.4th at p. 231 [courts may award damages on promissory estoppel claims].) Plaintiffs were unable to overcome Wachovia's showing that they held no equity in the home. Wachovia produced evidence that, just two months after the trustee sale, the home was listed on the open market for $589,950. After a price reduction, the seller, who sought the highest price the market would bear, sold the home in October 2009 for $555,000. The fair market value of the home reflected in the price that a willing buyer paid to a willing seller in an arm's length transaction in October 2009 was less than the $570,000 owed by plaintiffs, resulting in negative equity. [6]

Plaintiffs did not provide admissible evidence to counter Wachovia's factual showing. In his declaration, Mark Jones claimed that the $555,000 sale price was substantially below the current market value of the home due to demolition conducted by the seller. The trial court sustained Wachovia's objection to that opinion testimony for

---

[6] We reject Wachovia's argument that the $420,000 trustee sale price fixed the value of the property as of June 8, 2009. Wachovia relied on a passage in *Cornelison v. Kornbluth* (1975) 15 Cal.3d 590, 607 stating "a nonjudicial foreclosure sale, if regularly held, finally fixes the value of the property therein sold." But *Cornelison* was discussing the value of property in the context of a mortgagee's action for waste made after a full credit bid. It was not addressing the fair market value of foreclosed property. (*Id*. at pp. 606-607.) More recently, and more to the point, the California Supreme Court has explained that "the price at a foreclosure sale is not deemed the equivalent of the property's fair market value" because property sold within the strictures of state-prescribed foreclosure laws is worth less than property sold pursuant to normal marketing techniques. (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1236-1237.)

lack of foundation. Plaintiffs claim that the trial court's evidentiary ruling is error because Evidence Code section 813, subdivision (a) allows a property owner to testify regarding the property's value. But an owner's right to testify regarding the value of real property under section 813 is not absolute. (Evid. Code, § 811; *Contra Costa Water Dist. v. Bar-C Properties* (1992) 5 Cal.App.4th 652, 661.) Contrary to plaintiffs' assertion that ownership itself supplies foundation under Evidence Code section 813, a property owner is bound by the same rules of admissibility as any other witness regarding the value of real property. (Evid. Code, § 814 [requiring a foundation for real property value opinion based on information "of a type that reasonably may be relied upon by an expert forming an opinion as to the value of property[.]"];*Contra Costa Water Dist., supra*, at p. 661; see also *San Bernardino Flood Control Dist. v. Sweet* (1967) 255 Cal.App.2d 889, 898.) Under Evidence Code section 814, the Jones' opinion lacked foundation. Thus, the trial court's ruling was not an abuse of discretion. (*Miranda v. Bomel Construction Co., Inc.* (2010) 187 Cal.App.4th 1326, 1335 [reviewing summary judgment evidentiary objections for abuse of discretion]; *Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 281 [reviewing evidentiary objections for abuse of discretion].)

The trial court also did not abuse its discretion in sustaining Wachovia's objection to the declaration of Gary Nobile, a realtor who performed a market analysis of plaintiffs' foreclosed property. Evidence Code section 816, governing the admissibility of expert testimony regarding real estate values based on comparable property sales, requires that such testimony establish that "the property sold must be located sufficiently near the property being valued, and must be sufficiently alike in respect to character, size, situation, usability, and improvements, to make it clear that the property sold and the property being valued are comparable in value and that the price realized for the property sold may fairly be considered as shedding light on the value of the property being valued." In excluding an appraiser's report setting forth supposedly comparable land values, *In re Marriage of Smith* (1978) 79 Cal.App.3d 725, 752 explained: "A

17

foundation must be laid indicating the other property sold was sufficiently similar to the property in litigation to indicate 'the price realized for the other land may fairly be considered as shedding light on the value of the land in question.' [Citation.] It must also appear that the other sale was genuine and sufficiently voluntary to be a reasonable index of value and that the price was actually paid or substantially secured."

We agree with the trial court that the Nobile declaration lacked foundation. The declaration was supported by a report in which Nobile wrote that his $695,000 estimate for the foreclosed property "is based on not only the average price in the area, but also making adjustments for condition and location, as is typically done in an appraisal." The comparable sales summary attached to the report listed 13 homes sold over a six-month period. The summary shows the amount each home sold for, with an average sale price just under the $695,000 figure Nobile used in his report. But the summary does not identify the home or lot size, character, usability or improvements, as required by Evidence Code section 816, and we will not assume these foundational requirements have been met, as plaintiffs urge.

Plaintiffs argue that the trial court erred by excluding evidence of damages in the form of income tax liability, citing Code of Civil Procedure section 469, which provides: "No variance between the allegation in a pleading and the proof is to be deemed material, unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits." Plaintiffs do not dispute that tax consequences of the foreclosure are special damages that must be pleaded with specificity. (*Shook v. Pearson* (1950) 99 Cal.App.2d 348, 352.) Code of Civil Procedure section 469 does not apply here because plaintiffs did not allege these damages in the first place. Because the damages were not pleaded, there can be no variance between the pleading and the proof. The court did not err by rejecting cancelled debt tax liability damages as insufficiently pleaded.

We uphold the trial court's exclusion of evidence addressing the tax consequences of the trustee sale (paragraph 6 of the Marlin declaration) for the additional reason that unpaid tax liability is speculative. The trustee sale occurred in June 2009, and as of early 2012 plaintiffs had not paid taxes on the $150,147 cancelled debt. It is uncertain whether plaintiffs will ever pay taxes attributable to the foreclosure sale, and if so, how much they ultimately would pay. (See *Depalma v. Westland Software House* (1990) 225 Cal.App.3d 1534, 1544 [recognizing that inquiring into tax consequences is "necessarily complex and speculative"].) Accordingly, plaintiffs have failed to establish damages in the form of a cancelled debt tax liability.

## V. DISPOSITION

The judgment is affirmed.

19

_____

Grover, J.

**WE CONCUR:**

_____

Bamattre-Manoukian, Acting P.J.

_____

Márquez, J.

Filed 10/21/2014

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| MARK S. JONES et al., | H038382 |
| Plaintiffs and Appellants, | (Santa Clara County Super. Ct. No. 1-09-CV147777) |
| v. | |
| WACHOVIA BANK et al., | |
| Defendants and Respondents. | |

BY THE COURT:

     The opinion which was filed on September 22, 2014, is certified for publication.

                                     _____
                                     Grover, J.

                                     _____
                                     Bamattre-Manoukian, Acting P.J.

                                     _____
                                     Márquez, J.

     The written opinion which was filed on September 22, 2014, has now been certified for publication pursuant to rule 8.1105(b) of the California Rules of Court, and it is therefore ordered that the opinion be published in the official reports.

Dated: _____       _____
                                            Bamattre-Manoukian, Acting P.J.

| | |
|---|---|
| Trial Court: | Santa Clara County Superior Court<br>Superior Court No. 1-09-CV147777 |
| Trial Judge: | Hon. Kevin E. McKenney |
| Counsel for Plaintiffs/Appellants:<br>Mark S. Jones<br>Roberta D. Jones | David A. Ryder |
| Counsel for Defendant/Respondent:<br>Wachovia Bank | Robert Arthur Bailey |
| Counsel for Defendants/Respondents:<br>Wachovia Bank<br>Wells Fargo Bank | Jeremy E Shulman |