Filed 7/19/22

## CERTIFIED FOR PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

|  |  |
|---|---|
| MONICA MEDA,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>AUTOZONE, INC., et al.,<br><br>    Defendants and Respondents. | B311398<br><br>Los Angeles County<br>Super. Ct. No. BC683600 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Daniel S. Murphy, Judge. Reversed.

Kingsley & Kingsley, Eric. B. Kingsley, Ari J. Stiller, and Jessica L. Adlouni for Plaintiff and Appellant.

Arena Hoffman, Ronald D. Arena, and Michael Hoffman for Defendants and Respondents.

_____

# INTRODUCTION

In California, an employee is entitled to use a seat while working if the nature of the work reasonably permits the use of a seat. An employer is required, in that circumstance, to provide the employee with a suitable seat.

Plaintiff and appellant Monica Meda (plaintiff) worked as a sales associate for about six months at an AutoZone auto parts store (store) operated by defendant and respondent AutoZoners, a Limited Liability Company (AutoZoners). After she resigned from her position, plaintiff filed the present suit asserting one claim under the Labor Code Private Attorneys General Act of 2004 (Lab. Code, § 2699 et seq.) (PAGA). She asserts AutoZoners failed to provide suitable seating to employees at the cashier and parts counter workstations, as to which some or all of the work required could be performed while sitting.

AutoZoners moved for summary judgment, arguing plaintiff lacked standing to bring a representative action under PAGA because she was not aggrieved by AutoZoners's seating policy. Specifically, AutoZoners contends it satisfied the seating requirement by making two chairs available to its associates. The chairs were not placed at the cashier or parts counter workstations but were in, or just outside, the manager's office. In opposition to the summary judgment motion, plaintiff contended AutoZoners did not "provide" seating as required because no one told her chairs were available for use at the front counter workstations, she never saw anyone else use a chair at those workstations, and she was only given the option to use a chair as an accommodation after an on-the-job injury. The trial court agreed with AutoZoners, granted the motion, and entered judgment accordingly. Plaintiff appeals.

2

No published California authority has considered what steps should be taken by an employer to "provide" suitable seating within the meaning of the wage order seating requirement. We conclude that where an employer has not expressly advised its employees that they may use a seat during their work and has not provided a seat at a workstation, the inquiry as to whether an employer has "provided" suitable seating may be fact-intensive and may involve a multitude of job- and workplace-specific factors. Accordingly, resolution of the issue at the summary judgment stage may be inappropriate, as it was here. Because the undisputed facts create a triable issue of material fact as to whether AutoZoners "provided" suitable seating to its customer service employees at the front of the store by placing seats at other workstations in a separate area of the store, we conclude the court erred in granting the motion for summary judgment. Accordingly, we reverse.

## FACTS AND PROCEDURAL BACKGROUND

### 1. Background

Plaintiff worked part-time as a sales associate at the store from November 8, 2016, until she resigned on April 18, 2017. As a sales associate, plaintiff assisted customers at the parts counter by answering questions and locating parts. She also operated the cash register, cleaned the store, moved merchandise around the store, and stocked shelves.

Plaintiff estimated that in the normal course of her work, she spent approximately 40 percent of her time at the cashier station and stated that she could do all cashier tasks while seated. In addition, she estimated that she spent another 40 percent of her time at the parts counter and that roughly half of

the work required at that workstation could be performed while seated.

Both the parts counter and the cashier workstations (together, the front counter workstations) were located at elevated counters. According to plaintiff, a desk-height chair would be too low to use at the elevated counters. Instead, a raised chair or stool was needed at those workstations. Per company policy, the store had two raised chairs[1] on-site and they were generally located and used at two raised workstations in or near the manager's station area of the store. That area was open (i.e., did not have a door) but was separate and not visible from the cashier and parts counter workstations. Plaintiff observed that the manager often used a raised chair at one of the workstations near the manager's office.

Plaintiff used one of the raised chairs at the cashier workstation for two days as a disability accommodation after she injured her foot, but she believed those chairs were only available as an accommodation. And according to AutoZoners's corporate representative, a store manager could not unilaterally grant a request for an accommodation for sit-down work but would instead need to confer with a human resources manager.

No one at the store told plaintiff either that she was allowed to or was prohibited from using a raised chair at the front counter workstations and she never asked for permission to

---

[1] The parties repeatedly use the word "stool" to refer to the seating available at the store for use at raised workstations. The photographs included with the deposition excerpts, however, show that the seating at issue consisted of two chairs with four-rung backs and legs long enough to seat an employee at a raised workstation. We refer to these seats as "raised chairs."

4

do so. Plaintiff never saw other employees use a seat at the cashier or parts counter workstations. She did see another employee, who was pregnant at the time, use a small stool to sit on while she stocked shelves.

AutoZoners's stated policy was to make a stool available for any employee that needed or desired to use one. In May 2016, AutoZoners sent a "management action plan" to store managers directing them to ensure that their store had two stools available as needed and advising them that the stools could be placed by the manager's office, at the commercial desk, or by the end of the cashier workstation. AutoZoners did not offer training regarding its seating policy and the policy was not included in the employee handbook.

## 2.    Complaint

On September 14, 2017, several months after quitting her job at the store, plaintiff provided the statutorily required notice to the Labor and Workforce Development Agency of alleged Labor Code violations by AutoZoners. (Lab. Code, § 2699.3.) The agency did not respond to her notice within the time provided by statute.

Plaintiff filed the operative complaint on November 16, 2017, asserting one cause of action under PAGA on behalf of herself and other similarly situated sales associates presently or formerly employed in California by AutoZoners.[2] Plaintiff alleges AutoZoners failed to provide suitable seating as required under

[2] The original complaint named three defendants: AutoZone, Inc., AutoZoners, and AutoAnything, Inc. Plaintiff subsequently dismissed AutoZone, Inc. and AutoAnything, Inc. from the case, leaving AutoZoners as the sole defendant.

5

Industrial Welfare Commission wage order No. 7-2001,[3] which states in paragraph 14(A), "All working employees shall be provided with suitable seats when the nature of the work reasonably permits the use of seats."[4] (Cal. Code Regs., tit. 8, § 11070.) Specifically, plaintiff claims AutoZoners should have but did not provide suitable seating at the cashier and parts counter workstations. By her action, plaintiff seeks to recover penalties, interest, costs of suit, and attorney's fees.

### 3.     Summary Judgment Proceedings

AutoZoners moved for summary judgment on the ground that plaintiff lacks standing to bring a representative action under PAGA because she has not experienced a violation of the wage order seating requirement, i.e., she is not "aggrieved" as is required for standing purposes. Specifically, AutoZoners asserted it had provided suitable seating because there were two raised chairs in the store and plaintiff had access to them at all times during her employment. The raised chairs were located in the manager's office area which was open and accessible to employees. Moreover, plaintiff had used one of the raised chairs

---

[3] " ' "[W]age and hour claims are today governed by two complementary and occasionally overlapping sources of authority: the provisions of the Labor Code, enacted by the Legislature, and a series of 18 wage orders, adopted by the [Industrial Welfare Commission (IWC)]." [Citation.] The IWC, a state agency, was empowered to issue wage orders, which are legislative regulations specifying minimum requirements with respect to wages, hours, and working conditions.' " (*Kilby v. CVS Pharmacy, Inc.* (2016) 63 Cal.4th 1, 10–11 (*Kilby*).)

[4] We will refer to this provision as the wage order seating requirement.

at the cashier workstation after she suffered an on-the-job injury, and she therefore knew seating was available.

Plaintiff opposed the motion, arguing she was aggrieved because AutoZoners did not provide suitable seating for sales associates except as a disability accommodation. Further, according to plaintiff, AutoZoners had no formal policy regarding employee seating, did not inform sales associates that they could use a seat at the cashier and parts counter workstations, and did not have any readily available seats at or near those workstations. And although the store did have two raised chairs that could be used at raised workstations, one was located inside the manager's office at a raised workstation often used by the manager and the other was located just outside the manager's office at another raised workstation. In any event, plaintiff asserted, AutoZoners also violated the wage order seating requirement by providing only two raised chairs for all the employees at the store. Depending on customer volume, the store was typically staffed by five to nine employees. According to plaintiff, AutoZoners was required to provide at least five chairs so that every employee working at the cashier and parts counter workstations could sit at the same time.

The court granted AutoZoners's motion for summary judgment. The court focused on the meaning of "provide" as used in the wage order seating requirement and found that "provide" means "make available." Using that definition, the court noted it was undisputed that two raised chairs were located in the manager's area of the store and plaintiff had access to that area. The court concluded plaintiff would be unable to establish that AutoZoners failed to provide her with suitable seating because "(1) AutoZone[rs] had a company policy of making stools available

7

to employees like [plaintiff], (2) plaintiff knew that two stools were located in the store, (3) [plaintiff] never asked AutoZoners whether she could use the stools, (4) nobody ever told [plaintiff] that she could not use the stools, (5) [plaintiff] was allowed to use a stool the only time that she ever expressed a desire to do so, and (6) [plaintiff] had access to the [manager's] office where the chairs were located and there was no impediment to her using these chairs."

### 4.      Judgment and Appeal

The court signed and entered a judgment in favor of AutoZoners on February 4, 2021. Plaintiff timely appeals.

## DISCUSSION

Plaintiff contends the court erred in granting AutoZoners's motion for summary judgment because there are triable issues of material fact as to whether AutoZoners provided her with suitable seating. We agree.

### 1.      Standard of Review

The standard of review is well established. "The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) The moving party "bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Id*. at p. 850; Code Civ. Proc., § 437c, subd. (c).) The pleadings determine the issues to be addressed by a summary judgment motion. (*Metromedia, Inc. v. City of San Diego* (1980)

8

26 Cal.3d 848, 885, reversed on other grounds by *Metromedia, Inc. v. City of San Diego* (1981) 453 U.S. 490; *Nieto v. Blue Shield of California Life & Health Ins. Co.* (2010) 181 Cal.App.4th 60, 74.)

On appeal from a summary judgment, we review the record de novo and independently determine whether triable issues of material fact exist. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767; *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.) We resolve any evidentiary doubts or ambiguities in favor of the party opposing summary judgment. (*Saelzler,* at p. 768.) "In performing an independent review of the granting of summary judgment, we conduct the same procedure employed by the trial court. We examine (1) the pleadings to determine the elements of the claim, (2) the motion to determine if it establishes facts justifying judgment in the moving party's favor, and (3) the opposition—assuming movant has met its initial burden—to 'decide whether the opposing party has demonstrated the existence of a triable, material fact issue.' " (*Oakland Raiders v. National Football League* (2005) 131 Cal.App.4th 621, 630.) "We need not defer to the trial court and are not bound by the reasons in its summary judgment ruling; we review the ruling of the trial court, not its rationale." (*Ibid*.)

The appellant has the burden to show error, even if the appellant did not bear the burden in the trial court, and " 'to point out the triable issues the appellant claims are present by citation to the record and any supporting authority.' " (*Claudio v. Regents of the University of California* (2005) 134 Cal.App.4th 224, 230.) Further, "an appellant must present argument and authorities on each point to which error is asserted or else the issue is waived." (*Kurinij v. Hanna & Morton* (1997) 55

9

Cal.App.4th 853, 867.) Matters not properly raised or that lack adequate legal discussion will be deemed forfeited. (*Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 655–656.)

## 2. The court erred in granting AutoZoners's motion for summary judgment.

### 2.1. Plaintiff's Complaint

As noted, we first consider the allegations of plaintiff's complaint to determine the scope of the issues.

Plaintiff alleges AutoZoners failed to provide suitable seating as required under wage order No. 7-2001, which states in paragraph 14(A), "All working employees shall be provided with suitable seats when the nature of the work reasonably permits the use of seats." As the party with the ultimate burden at trial, therefore, a plaintiff would be required to establish that the nature of an employee's work reasonably permits the use of a seat and that the employer failed to provide a suitable seat. And for purposes of standing in a representative action, a plaintiff would need to establish that she performed tasks which reasonably permitted the use of a seat and that her employer did not provide her with a suitable seat.

Plaintiff alleges that AutoZoners "had a consistent policy of failing to provide suitable seats to Plaintiff and other aggrieved employees at locations within their stores where the nature of the work reasonably permits the use of a suitable seat, including at the cash register and the parts counter." Further, she alleges that "[w]hen Plaintiff and other Aggrieved Employees worked at the cash register or the parts counter, the nature of the work allowed for a suitable seat to be provided. However, [AutoZoners] did not make a suitable seat available to Plaintiff and other Aggrieved

10

Employees at these locations within its stores. Instead, Plaintiff and other Aggrieved Employees were forced to stand while working at these locations." These allegations sufficiently state a cause of action for violation of the wage order seating requirement.

### 2.2. AutoZoners's Evidence

As the moving party, AutoZoners had the initial burden to show that plaintiff's claim has no merit—that is, that one or more elements of the cause of action cannot be established, or that there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subd. (o); see *Jones v. Wachovia Bank* (2014) 230 Cal.App.4th 935, 945.) "If a defendant's moving papers make a prima facie showing that justifies a judgment in its favor, the burden of production shifts to the plaintiff to make a prima facie showing of the existence of a triable issue of material fact." (*Jones*, at p. 945; *Professional Collection Consultants v. Lauron* (2017) 8 Cal.App.5th 958, 965.)

In its motion for summary judgment, AutoZoners correctly noted that a plaintiff asserting a representative claim under PAGA must be aggrieved. "The plain language of section 2699(c) has only two requirements for PAGA standing. The plaintiff must be an aggrieved employee, that is, someone 'who was employed by the alleged violator' and 'against whom one or more of the alleged violations was committed.' ([Lab. Code,] § 2699(c).)" (*Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 83–84.) It is undisputed that plaintiff worked for AutoZoners. AutoZoners contends, however, that it did not violate the wage order seating requirement because it provided suitable seating to plaintiff throughout the course of her employment.

11

Specifically, AutoZone notes that the store had two raised chairs on-site and that the chairs were typically located in the manager's station area. Plaintiff had access to that area as it was not enclosed or behind a door, and she was aware that the store had two raised chairs from the first day of her employment. Plaintiff could not recall if she ever asked to use a raised chair at the parts counter or cashier workstations. But she agreed that no one ever told her that she could not use the raised chairs.

Plaintiff did use one of the raised chairs at the cashier workstation for a short time. After plaintiff injured her foot, she asked the store manager to allow her to use a raised chair as an accommodation. He granted that request. Although plaintiff was never told she could no longer use the raised chair, she stopped using it after two days. Plaintiff's only complaint about the raised chairs is that she believed she was not allowed to use them at the front counter workstations except as required for a disability accommodation.

We agree with the court that AutoZoners produced sufficient evidence to meet the initial burden of production on the standing issue, i.e., that it provided suitable seating to plaintiff.

### 2.3. Plaintiff's Evidence

In opposition to AutoZoners's motion, plaintiff provided her own declaration as well as a declaration by another employee at the store. She also submitted excerpts of her own deposition and the deposition of AutoZoners's person most knowledgeable, C. Hopkins.

Much of plaintiff's evidence mirrored AutoZoners's evidence. Plaintiff agreed, for example, that the store had two raised chairs on-site and they were generally located and used at two raised workstations in or near the manager's station area of

12

the store. That area was open to the rest of the store but was separated and not visible from the cashier and parts counter workstations. Plaintiff also observed, however, that the manager often used a raised chair at the workstations near the manager's office.

Plaintiff also conceded that she used one of the raised chairs at the cashier workstation for two days after she injured her foot. She acknowledged that no one at the store told her either that she was allowed to or was prohibited from using a raised chair at the front counter workstations and that she never asked for permission to do so. But plaintiff said she was unaware that she could use a raised chair at the front counter stations. She thought the raised chairs were only provided as an accommodation because she never saw other employees using chairs at the parts counter or cashier workstations. And the only other employee she ever saw using any sort of seat during her work was pregnant and used a small stool to sit while she stocked shelves.

According to Hopkins, a store manager could not unilaterally grant a request to use a seat as an accommodation but would need to confer with a human resources manager regarding any accommodation for an on-the-job injury. Nevertheless, AutoZoners's stated policy was to make a stool available for any employee that needed or desired to use one. The policy was included in a memorandum and then a "management action plan," i.e., a company-wide communication to store managers, in May 2016. The policy directed store managers to ensure that each store had two stools available as needed and advised that the stools could be placed by the manager's office, at the commercial desk, or by the end of the cashier workstation. In

13

the event that two people wanted to use the same chair, Hopkins said "they would have to work that out between the two of them as adults." AutoZoners did not offer training regarding its seating policy, and the policy was not included in the employee handbook.

### 2.4. Analysis

As noted, the trial court found plaintiff would be unable to establish that she was aggrieved for standing purposes because AutoZoners demonstrated, as a matter of law, that it "provided" suitable seating to plaintiff.[5] We conclude that triable issues of material fact exist on this issue.

Where, as here, " 'a wage order's validity and application are conceded and the question is only one of interpretation, the usual rules of statutory interpretation apply.' [Citations.]" (*Kilby, supra,* 63 Cal.4th at p. 11.) Accordingly, and "[a]s we would in interpreting a statute, we begin by examining the words of the wage order as the best indicator of the IWC's intent. (See *Brinker* [*Restaurant Corp. v. Superior Court* (2012)] 53 Cal.4th [1004,] 1027 [(*Brinker*)]; *Martinez v. Combs* (2010) 49 Cal.4th 35, 63.)" (*Kilby, supra,* 63 Cal.4th at p. 16.) " ' " ' "We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its

---

[5] Because AutoZoners's motion for summary judgment only raised the issue of plaintiff's standing to bring a PAGA claim, we focus solely on whether a triable issue exists concerning *plaintiff's* access to suitable seating. We need not, and do not, consider plaintiff's additional assertion that AutoZoners violated the wage order seating requirement by failing to supply enough chairs to seat every worker at the same time.

scope and purpose and to harmonize the various parts of the enactment. If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy." [Citation.] "Furthermore, we consider portions of a statute in the context of the entire statute and the statutory scheme of which it is a part, giving significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose." ' " ' " (*Segal v. ASICS America Corp.* (2022) 12 Cal.5th 651, 662.) As to wage orders specifically, " '[i]n light of the remedial nature of the legislative enactments authorizing the regulation of wages, hours and working conditions for the protection and benefit of employees, the statutory provisions are to be liberally construed with an eye to promoting such protection.' [Citations.]" (*Brinker, supra,* 53 Cal.4th at pp. 1026–1027.)

The wage order at issue states, "All working employees shall be *provided* with suitable seats when the nature of the work reasonably permits the use of seats." (Italics added.) The term "provide" is not defined in the wage order or the Labor Code and no published California decision has considered the precise question before us. As the trial court observed, however, "provide" generally means "make available to." (See Merriam-Webster's Collegiate Dict. (11th ed. 2008) p. 1001 ["to supply or make available (something wanted or needed)"].) "Available," in turn, typically means "present or ready for immediate use." (*Id*., at p. 84.)

15

An employer may provide a suitable seat for an employee by placing a seat at the employee's workstation, as is commonly done in an office setting. Plaintiff asserts, however, that "[t]he commonsense reading of the [wage order seating requirement] is that employers *must* provide seats to employees in the locations they are performing work that permits seating. AutoZone[rs] did not satisfy that requirement by keeping two [raised chairs] in a separate part of the store, placing them in use in those other locations, and never informing employees that those stools were available for immediate use at the cash register or parts counter." (Italics added.)

Because we are focused on the issue of standing to bring a PAGA claim, we need not consider whether an employer is required to place a seat at every workstation involving work that *could* be performed while seated.[6] Indeed, that may not always be feasible given the particular characteristics of a workspace. But where, as here, the employer does not place a seat at an employee's workstation, the inquiry as to whether a seat has been "provided" to the employee may be fact-intensive.

Our high court analyzed certain aspects of the wage order seating requirement in *Kilby, supra*. There, the court addressed three questions certified by the Ninth Circuit Court of Appeals: (1) Does the "nature of the work" refer to individual tasks or the entire range of an employee's duties? (2) What factors should courts consider to determine whether the nature of the work "reasonably permits" the use of a seat? (3) If an employer has not provided any seat, must an employee prove a suitable seat is

---

[6] Nothing in this opinion should be construed as adopting, or rejecting, such a rule.

available in order to show that the employer has violated the wage order seating requirement? (*Kilby, supra,* 63 Cal.4th at p. 8.) Although the court did not directly consider what an employer must do to "provide" suitable seating, the nature of the court's inquiry is of some assistance.

The court explained that the IWC originated as an investigative entity formed by the Legislature to address inadequate wages and poor working conditions. (*Kilby, supra,* 63 Cal.4th at p. 10.) The court also reviewed the history of the wage order seating requirement at length, discussing its evolution. Initially, the seating requirement was intended to allow employees to sit while performing tasks using tools at work tables and while using machinery. The IWC later expanded the suitable seating requirement to apply whenever "the nature of the work permits." The IWC then amended the seating requirement to read, as it does now, that an employer must provide seating "when the nature of the work reasonably permits the use of seats." (*Id.* at pp. 11–15.) The bulk of the court's subsequent discussion focused on how to determine whether the "nature of the work" requires that seating be provided and in doing so, the court considered positions previously taken by the Division of Labor Standards Enforcement (DLSE). The court emphasized the IWC's position, which was reinforced by DLSE, that " 'humane considerations for the welfare of employees requires that they be allowed to sit at their work or between operations when it is feasible for them to do so.' " (*Id.* at pp. 14, 16–17.) Further, the court noted that DLSE's enforcement efforts necessarily focused on a range of factors: "The DLSE 'would consider all available facts and conditions, including but not limited to the physical layout of the workplace and the employee's

17

job functions, to determine compliance with Section 14 requirements.' " (*Id.* at p. 15.)

The court adopted the DLSE's approach to some degree. Specifically, the court held that "[w]hen evaluating whether the 'nature of the work reasonably permits the use of seats,' courts must examine subsets of an employee's total tasks and duties by location, such as those performed at a cash register or a teller window, and consider whether it is feasible for an employee to perform each set of location-specific tasks while seated. Courts should look to the actual tasks performed, or reasonably expected to be performed, not to abstract characterizations, job titles, or descriptions that may or may not reflect the actual work performed. Tasks performed with more frequency or for a longer duration would be more germane to the seating inquiry than tasks performed briefly or infrequently." (*Kilby, supra*, 63 Cal.4th at p. 18.)

Taking a similarly fact-specific approach regarding the question presented here—whether an employer has "provided" suitable seating—makes sense. As the court recognized in *Kilby*, every workplace is different, and a variety of factors may impact how an employer could "provide" suitable seating at a particular workstation. Courts might consider, for example, the nature of an employee's job responsibilities, how frequently an employee changes tasks, the physical layout of the workspace, the number of employees sharing a workstation, and the extent to which the location of a seat at or near a workstation may obstruct employees' tasks or cause congestion (and possibly create safety risks) in a specific work area.

We also take guidance from a case in which the Supreme Court discussed the meaning of "provide" in a related context. In

18

*Brinker, supra*, the court "consider[ed] what it means for an employer to provide a nonexempt employee a meal period." (*Brinker, supra*, 53 Cal.4th at p. 1034.) The employee argued the employer was obligated to ensure that work stopped for the 30-minute rest period. The employer, by contrast, asserted that it was only required to "make available" a meal period during which no work would be required and that it did not need to ensure the employee performed no work during that time. (*Ibid*.)

Ultimately, the court concluded that an employer "provides" a meal break "if it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so. What will suffice may vary from industry to industry, and we cannot in the context of this class certification proceeding delineate the full range of approaches that in each instance might be sufficient to satisfy the law." (*Brinker, supra*, 53 Cal.4th at p. 1040.) The court elaborated: "Proof an employer had knowledge of employees working through meal periods will not alone subject the employer to liability for premium pay; employees cannot manipulate the flexibility granted them by employers to use their breaks as they see fit to generate such liability. On the other hand, an employer may not undermine a formal policy of providing meal breaks by pressuring employees to perform their duties in ways that omit breaks." (*Ibid*.)

Although providing a meal break is a qualitatively different undertaking than providing a seat, the court's analysis in *Brinker* provides useful guidance. The court acknowledged, as it did in *Kilby*, that the inquiry as to whether an employer provides a meal break is fact-intensive and the relevant factors may vary

19

depending on the specific circumstances. In addition, the court observed that in order to "provide" a meal break, an employer must not only permit an employee to take a meal break but must also refrain from any practice that might discourage or impede the employee from taking advantage of the meal break. (*Brinker*, *supra*, 53 Cal.4th at p. 1040.)

These aspects of the court's analyses in *Brinker* and *Kilby* lead us to conclude that a triable issue of material fact exists as to whether AutoZoners "provided" plaintiff with a suitable seat within the meaning of the wage order seating requirement.

First, we note that although two raised chairs were present in the store, they were not placed at the cashier workstation or the parts counter workstation nor were they in the immediate vicinity of those workstations. That is, an employee would need to leave the front counter workstations, proceed down a short hallway and around a corner into the manager's work area—and out of customer view—to locate, and then move, one of the raised chairs to the front counter. While we do not suggest that an employer must always place a chair at or within a specific distance of a workstation, the proximity of a seat to an employee's workstation is a relevant factor to be considered when assessing whether a seat has been provided for the employee's use. This is particularly true where, as here, the employer has not advised its employees that seats are available for their use by either directly informing the employees or including the seating policy in its employee handbook.[7]

---

[7] We do not suggest that this circumstance is determinative. On these facts, however, it is relevant.

Second, the raised chairs were placed at other raised workstations in the store and plaintiff often observed the store manager using the raised chairs. Viewed in the light most favorable to plaintiff—and in favor of the protective purpose of the IWC's work orders—this evidence could support a reasonable inference that the raised chairs were not provided for use at the front counter workstations. Specifically, a reasonable trier of fact could conclude AutoZoners intended that the raised chairs be used only at the raised workstations in the area of the manager's office. Alternatively, one could conclude that AutoZoners discouraged its employees from using raised chairs at the front counter workstations by placing the chairs at raised workstations in other areas of the store. The fact that the chairs were placed in or just outside the manager's office could also support such an inference, as employees might feel uncomfortable taking a chair from the manager's area for their own use in another location.

Finally, the fact that no other employees ever used a raised chair at the parts counter or cashier workstations[8] could support a reasonable inference that AutoZoners either prohibited or discouraged the use of seats at the front counter workstations, notwithstanding its stated (but uncommunicated) policy of permitting the use of seats.

AutoZoners asserts, without substantive analysis, that plaintiff's belief that she could not use the raised chairs at the front counter workstations is irrelevant. According to AutoZoners, "[t]he statute only requires that the company

---

[8] AutoZoners asserts that plaintiff "saw someone else" using a seat at the front counter workstations. Not so. Plaintiff saw a pregnant employee using a low stool to sit on while stocking shelves.

21

provide suitable seating and give employees reasonable access to it." And here, it claims, plaintiff did have access to the raised chairs because they were not in a locked area and no one ever told plaintiff that she could not use those chairs. We agree with AutoZoners insofar as it suggests that employee access to chairs and an employer's instructions to employees concerning their use of chairs are relevant considerations. But on the facts before us, we cannot say that those factors are conclusive. Other factors we have discussed are also relevant and, at a minimum, create a triable issue of material fact as to whether AutoZoners provided suitable seating to plaintiff.

AutoZoners also contends that plaintiff's stated belief that she could not use the raised chairs at the front counter workstations is undermined by the fact that she used a raised chair at the cashier workstation after injuring her foot. The opposite is true, however. The only time anyone used a raised chair when plaintiff was working was when she was allowed to use one after injuring her foot. That fact is consistent with her understanding that an employee could only use a chair as an accommodation. Moreover, AutoZoners's corporate representative indicated that a store manager could not provide a seat as an accommodation without conferring with a corporate human resources employee. That fact could also support a reasonable inference that seats were not generally available to the store's employees.

AutoZoners notes that plaintiff never asked if she could use the raised chairs and that no one ever prohibited her from using them. Apparently, AutoZoners believes that an employee must inquire whether suitable seating is available before a violation of the wage order seating requirement can be established.

AutoZoners cites no legal authority, and presents no cogent analysis, in support of this position. Accordingly, the issue is forfeited. (*Keyes v. Bowen*, *supra*, 189 Cal.App.4th at pp. 655–656 [noting matters not properly raised or that lack adequate legal discussion will be deemed forfeited].)

## DISPOSITION

The judgment is reversed. Plaintiff Monica Meda shall recover her costs on appeal.

**CERTIFIED FOR PUBLICATION**

LAVIN, Acting P. J.

WE CONCUR:

EGERTON, J.

ADAMS, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

23