Filed 12/6/21  Abelar v. Tilles CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DEE ANN ABELAR et al., | B302351 |
| Plaintiffs and Appellants, | Los Angeles County |
| v. | Super. Ct. No. BC641637 |
| IRA TILLES et al., | |
| Defendants and Respondents. | |

APPEALS from judgments of the Superior Court of Los Angeles County, Curtis A. Kin, Judge. Affirmed.

Gary Rand & Suzanne E. Rand-Lewis, Suzanne E. Rand-Lewis and Timothy Rand-Lewis for Plaintiffs and Appellants.

Schaeffer Cota Rosen, James C. Schaeffer and Jennifer B. Saccomano for Defendants and Respondents Ira Tilles and Tilles, M.D. Corporation.

Law Offices of Michael D. Gonzalez, Michael D. Gonzalez and Andrea D. Vazquez for Defendants and Respondents Pejman Badiei and Pejman Badiei, M.D., Incorporated.

# INTRODUCTION

This is a medical malpractice and loss of consortium action brought by plaintiffs and appellants Dee Ann Abelar and her husband Brian Abelar (plaintiffs)[1] against, as pertinent here, defendants and respondents Dr. Ira Tilles and Dr. Pejman Badiei,[2] together with their medical corporations, Tilles M.D. Corporation, and Pejman Badiei, M.D., Incorporated (collectively, defendants.) Plaintiffs appeal from judgments entered after the trial court granted defendants' motions for summary judgment.

Plaintiffs' case concerns an alleged failure by defendants, and others, to diagnose and treat an infection. Dee Ann underwent surgery to remove a mass from her brain. Several weeks after the surgery, she suffered a prolonged grand mal seizure and was admitted to the emergency department at Simi Valley Hospital. There, she was evaluated and treated by Tilles and several other physicians. She was discharged the same day but returned 10 days later exhibiting stroke-like symptoms. She was again treated in the emergency department by Tilles and by Badiei upon her admission to the hospital, where she remained for more than a week until she was transferred to another facility, USC Keck Medical Center, to receive a higher level of care. There, eight days after Dee Ann's discharge from Simi

---

[1] Because plaintiffs have the same last name, we refer to Dee Ann Abelar by her first name in describing the facts of the case. No disrespect is intended.

[2] Although the individual defendants are physicians, we refer to them throughout our opinion by their last names only. We reserve the use of the honorific, "Dr. _____," for the medical experts. No disrespect is intended.

Valley Hospital, doctors discovered the presence of an infection. Plaintiffs contend Tilles and Badiei, among others, negligently failed to diagnose and treat the infection while Dee Ann was treated at Simi Valley Hospital.

Defendants separately moved for summary judgment and supported their motions with declarations by expert physicians who opined that their treatment met the standard of care and did not cause or contribute to the infection. As we explain, plaintiffs failed to present admissible expert testimony in opposition to the motions for summary judgment. For that reason, and others, we concluded the trial court properly granted the motions for summary judgment. Accordingly, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### 1. General Background

Plaintiffs filed this medical malpractice action against numerous physicians, their associated medical corporations, and several hospitals in December 2016.[3] As pertinent here, the complaint states causes of action for professional negligence and loss of consortium against Tilles and Badiei.[4]

According to the complaint, on October 6, 2015, a neurosurgeon at Providence Saint John's Hospital performed surgery on Dee Ann to remove a meningioma that had been

---

[3] References to Tilles and Badiei include their eponymous corporate entities as appropriate.

[4] The complaint includes eight causes of action. All but two of those were resolved in favor of Tilles and Badiei pursuant to a successful demurrer by another physician defendant and stipulation between plaintiffs and the remaining physician defendants.

compressing her optic nerve. On November 20, 2015, Dee Ann suffered a grand mal seizure and was admitted to the emergency department at Simi Valley Hospital where she was examined and treated by Tilles, a physician in the emergency medicine department. She was discharged later that day.

Dee Ann was admitted to the emergency department at Simi Valley Hospital again on November 30, 2015, and was subsequently treated by both Tilles and Badiei, a physician and hospitalist at Simi Valley Hospital. Dee Ann remained hospitalized until she was transferred to USC Keck Medical Center on December 11, 2015.

Dee Ann had a second surgery on December 18, 2015, during which portions of her brain and skull had to be removed due to an infection. The infection was definitively diagnosed on December 19, 2015.

With respect to the professional negligence claims, plaintiffs contend the infection was present throughout the time Tilles and Badiei treated Dee Ann and that the physicians' failure to diagnose and treat the infection fell below the standard of care. Plaintiffs also assert a claim for loss of consortium.

## 2. Tilles's Motion for Summary Judgment

Tilles filed a motion for summary judgment. With respect to the professional negligence claim, Tilles asserted that Dee Ann would be unable to establish two elements of the claim: breach of the standard of care and causation. The motion was supported by a declaration by Dr. David Barcay, a physician and specialist in internal medicine and emergency medicine. Dr. Barcay reviewed Dee Ann's medical records and opined that Tilles met the standard of care at all times while treating Dee Ann and that no act or omission by Tilles caused or contributed to her

4

subsequently-diagnosed infection. Tilles also argued that because Dee Ann's negligence claim failed, the loss of consortium claim necessarily failed.

Plaintiffs opposed the motion on myriad but largely unsupported grounds. Oddly, plaintiffs argued that Dr. Barcay's expert opinion was inadmissible because "there is no proof that Defendant [Tilles] was even a doctor." Plaintiffs also asserted, without analysis, that Tilles's separate statement failed to state any material facts. In addition, plaintiffs broadly claimed that all facts asserted by Tilles were disputed but they failed to discuss with particularity even one fact they claimed was disputed. And although plaintiffs proffered an expert declaration by Dr. Leslie B. Rand-Luby, they did not discuss any aspect of her opinion in their opposition brief. Finally, and again without any substantive analysis, plaintiffs suggested Dr. Barcay's opinion was "insufficient" because it was "baseless, improper and false" as well as "conclusory." Plaintiffs also offered their own declarations in support of their opposition.

In reply, Tilles argued that plaintiffs' physician expert was not qualified to offer an expert opinion regarding the standard of care. Specifically, Health and Safety Code section 1799.110 provides that in any negligence case asserted against a physician providing emergency medical coverage for a general acute care hospital emergency department, expert opinion may only be admitted from physicians with substantial and recent experience in that practice area. Plaintiffs' expert was not so qualified.

The court granted Tilles's motion for summary judgment. As an initial matter, the court sustained Tilles's objection to Dr. Rand-Luby's declaration on the ground that she lacked the professional experience required under Health and Safety Code

section 1799.110. Accordingly, the court found that the declaration was inadmissible. As a consequence of the court's evidentiary ruling, plaintiffs' opposition was unsupported by appropriate expert evidence required to create a dispute of material fact concerning the standard of care and/or medical causation. The court concluded, therefore, that plaintiffs failed to establish the existence of a dispute of material fact.

### 3. Badiei's Motion for Summary Judgment

Badiei also filed a motion for summary judgment arguing that his care and treatment of Dee Ann met the standard of care. The motion was supported by a declaration by Dr. Jeffrey Salberg, a physician and specialist in internal medicine. Dr. Salberg reviewed Dee Ann's medical records and opined that Badiei met the standard of care at all times while treating Dee Ann. Badiei also argued that because the negligence claim failed, the claim for loss of consortium also failed. Plaintiffs did not oppose the motion.

The court granted Badiei's motion for summary judgment on both procedural and substantive grounds. Procedurally, the court noted that plaintiffs failed to submit an opposition brief and failed to address the facts set forth in Badiei's separate statement. The court therefore exercised its discretion to grant Badiei's motion for summary judgment under Code of Civil Procedure section 437c, subdivision (b)(3).[5]

---

[5] That subsection provides: "The opposition papers shall include a separate statement that responds to each of the material facts contended by the moving party to be undisputed, indicating if the opposing party agrees or disagrees that those facts are undisputed. The statement also shall set forth plainly and concisely any other material facts the opposing party contends are disputed. Each material

The court also granted the motion on substantive grounds. Badiei submitted uncontradicted expert evidence establishing that his care and treatment of Dee Ann met the standard of care and that no act or omission by Badiei caused or contributed to the infection. Because plaintiffs failed to offer any evidence of negligence or causation, the court concluded that Badiei was entitled to summary judgment as to the professional negligence claim as well as the loss of consortium claim.

4.     **Entry of Judgments and Appeals**

On September 6, 2019, the court signed and entered judgment in favor of Tilles. Plaintiffs timely appeal.

On September 20, 2019, the court signed and entered judgment in favor of Badiei. Plaintiffs timely appeal.

## DISCUSSION

Plaintiffs claim the court erred by granting the motions for summary judgment brought by Tilles and Badiei. We disagree.

1.     **Scope and Standard of Review**

The standard of review is well established. "The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) The moving party "bears the

---

fact contended by the opposing party to be disputed shall be followed by a reference to the supporting evidence. Failure to comply with this requirement of a separate statement may constitute a sufficient ground, in the court's discretion, for granting the motion."

burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Id.* at p. 850; Code Civ. Proc., § 437c, subd. (c).) The pleadings determine the issues to be addressed by a summary judgment motion. (*Metromedia, Inc. v. City of San Diego* (1980) 26 Cal.3d 848, 885, reversed on other grounds by *Metromedia, Inc. v. City of San Diego* (1981) 453 U.S. 490; *Nieto v. Blue Shield of California Life & Health Ins. Co.* (2010) 181 Cal.App.4th 60, 74.)

On appeal from a summary judgment, we review the record de novo and independently determine whether triable issues of material fact exist. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767; *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.) We resolve any evidentiary doubts or ambiguities in favor of the party opposing summary judgment. (*Saelzler,* at p. 768.) "In performing an independent review of the granting of summary judgment, we conduct the same procedure employed by the trial court. We examine (1) the pleadings to determine the elements of the claim, (2) the motion to determine if it establishes facts justifying judgment in the moving party's favor, and (3) the opposition—assuming movant has met its initial burden—to 'decide whether the opposing party has demonstrated the existence of a triable, material fact issue.' " (*Oakland Raiders v. National Football League* (2005) 131 Cal.App.4th 621, 630.) "We need not defer to the trial court and are not bound by the reasons in its summary judgment ruling; we review the ruling of the trial court, not its rationale." (*Ibid.*)

The appellant has the burden to show error, even if the appellant did not bear the burden in the trial court, and " 'to point out the triable issues the appellant claims are present by citation to the record and any supporting authority.' " (*Claudio v.*

*Regents of the University of California* (2005) 134 Cal.App.4th 224, 230.) Further, "an appellant must present argument and authorities on each point to which error is asserted or else the issue is waived." (*Kurinij v. Hanna & Morton* (1997) 55 Cal.App.4th 853, 867.) Matters not properly raised or that lack adequate legal discussion will be deemed forfeited. (*Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 655–656.)

## 2. Legal Principles Regarding Professional Negligence

As the party with the ultimate burden at trial, plaintiffs would be required to establish medical negligence by proving "(1) a duty to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) a breach of the duty; (3) a proximate causal connection between the negligent conduct and the injury; and (4) resulting loss or damage." (*Johnson v. Superior Court* (2006) 143 Cal.App.4th 297, 305.)

With respect to the first element, the standard of care for medical professionals requires " ' "that a physician or surgeon have the degree of learning and skill ordinarily possessed by practitioners of the medical profession in the same locality and that he [or she] exercise *ordinary care* in applying such learning and skill to the treatment of [the] patient." [Citation.]' " (*Flowers v. Torrance Memorial Hospital Medical Center* (1994) 8 Cal.4th 992, 998, final brackets added; see also *Brown v. Colm* (1974) 11 Cal.3d 639, 642–643 [noting "a doctor is required to apply that degree of skill, knowledge and care ordinarily exercised by other members of his profession under similar circumstances"]; *McAlpine v. Norman* (2020) 51 Cal.App.5th 933, 938 [same].) "Proof of this standard is ordinarily provided by another physician, and if a witness has disclosed sufficient

knowledge of the subject to entitle his opinion to go to the jury, the question of the degree of his [or her] knowledge goes to the weight of [the] testimony rather than to its admissibility." (*Brown*, at p. 643; *In re Roberto C.* (2012) 209 Cal.App.4th 1241, 1249.) Thus, the standard of care can ordinarily be proved only by expert testimony, " 'unless the conduct required by the particular circumstances is within the common knowledge of the layman.' [Citations.]" (*Landeros v. Flood* (1976) 17 Cal.3d 399, 410.)

Proof of causation may also require expert testimony "[w]here the complexity of the causation issue is beyond common experience." (*Garbell v. Conejo Hardwoods, Inc.* (2011) 193 Cal.App.4th 1563, 1569; accord, *Webster v. Claremont Yoga* (2018) 26 Cal.App.5th 284, 290.) In a summary judgment proceeding, an expert's opinions may be rejected if they are conclusory, speculative, without foundation, or stated without sufficient certainty. (*Sanchez v. Kern Emergency Medical Transportation Corp.* (2017) 8 Cal.App.5th 146, 155–156 (*Sanchez*).)

3. **The court properly granted summary judgment in favor of Tilles.**

### 3.1. Plaintiffs' Complaint

As noted, we first consider the allegations of plaintiffs' complaint to determine the scope of the issues. Plaintiffs allege Dee Ann was admitted to the emergency department at Simi Valley Hospital by Tilles on November 20, 2015, after suffering a grand mal seizure. Further, plaintiffs allege Dee Ann reported to Tilles that she had been suffering decreased vision and double vision, fever and nausea with vomiting, and had had a seizure. Plaintiffs allege Tilles breached the standard of care by failing to

diagnose an infection which subsequently caused Dee Ann serious injury. As to Dee Ann's second admission to Simi Valley Hospital on November 30, 2015, plaintiffs' allegations are less specific, in that they state only that Tilles treated her at some point and again breached the standard of care by failing to diagnose Dee Ann's infection.

### 3.2. Tilles's Evidence

As the moving party, Tilles had the initial burden to show that plaintiffs' claims have no merit—that is, that one or more elements of the cause of action cannot be established, or that there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subd. (o); see *Jones v. Wachovia Bank* (2014) 230 Cal.App.4th 935, 945 (*Jones*).) "If a defendant's moving papers make a prima facie showing that justifies a judgment in its favor, the burden of production shifts to the plaintiff to make a prima facie showing of the existence of a triable issue of material fact." (*Jones*, at p. 945; *Professional Collection Consultants v. Lauron* (2017) 8 Cal.App.5th 958, 965.)

Tilles's motion for summary judgment addressed the first two elements of negligence: standard of care and causation. As to the standard of care, Tilles's expert physician, Dr. Barcay, reviewed Dee Ann's medical records from Providence Saint Joseph Medical Center and Simi Valley Hospital. Dr. Barcay noted that Tilles's first examination of Dee Ann on November 20, 2015, was normal, i.e., she was oriented to person, place, time, and situation, her sensory, motor, speech, and coordination skills were normal, her white blood cell count was normal, and she had no nausea or vomiting, no shortness of breath, and no neck rigidity. Tilles ordered a CT scan of the brain and reviewed the results with a staff neurologist, who indicated Dee Ann did not

11

need to be observed in the hospital. Tilles attributed Dee Ann's seizure to her discontinuation of a prophylactic anti-seizure medication and discharged her with a prescription for a different medication and instructions to follow-up with the neurologist as an outpatient.

Dr. Barcay opined, based on his education, training, and extensive experience as an emergency medicine physician, that Tilles met the standard of care in attributing Dee Ann's seizure to the discontinuation of anti-seizure medication, concluding that the CT imaging demonstrated no intracranial process or acute intracranial hemorrhage, prescribing a different anti-seizure medication, and discharging Dee Ann after consulting with a neurologist.

Dr. Barcay drew similar conclusions with respect to Dee Ann's admission to Simi Valley Hospital on November 30, 2015. When Dee Ann came to the hospital, she exhibited stroke-like symptoms including an inability to speak as well as facial droop and muscle paralysis on her left side. Tilles called a "Code Stroke" and consulted with the staff neurologist and Dee Ann's neurosurgeon. Tilles then admitted Dee Ann to the hospital for further observation and treatment. Dr. Barcay concluded that Tilles's request for a consult and his decision to admit Dee Ann were both within the standard of care.

Critically, Dr. Barcay opined that on the two days Tilles treated Dee Ann, she had no clinical, radiological, or laboratory signs or symptoms which would have alerted an emergency medicine physician that she had meningitis or any infectious process at that time. Specifically, Dee Ann's white blood cell counts were within normal range, she reported no neck rigidity or tension, she was not experiencing nausea or vomiting, and she

12

was not photophobic. Accordingly, Dr. Barcay attested, to a reasonable degree of medical certainty, Tilles met the standard of care with respect to his treatment and care of Dee Ann, and that nothing Tilles did, or did not do, contributed in any way to her alleged injuries.

We agree with the court that Tilles provided sufficient evidence to meet his initial burden of production with respect to standard of care and causation. The burden therefore shifted to plaintiffs to submit expert declarations demonstrating the existence of a material fact on these issues.

### 3.3. Plaintiffs' Evidence

In support of their opposition to the motion for summary judgment, plaintiffs offered three pieces of evidence. As noted, they offered a declaration by Dr. Rand-Luby which the court determined was wholly inadmissible. We address the court's evidentiary ruling, *post*.

Plaintiffs also offered their own declarations. As pertinent here, Dee Ann attested that Tilles admitted her to Simi Valley Hospital on November 20, 2015. She had been suffering decreased vision and double vision, fever, nausea with vomiting, and vomited in the emergency room. She also denied that she stopped taking anti-seizure medication, contrary to Tilles's notes. Brian's declaration also stated that Dee Ann had been suffering decreased vision and double vision, fever, nausea with vomiting, and had vomited in the emergency room.

### 3.4. Analysis

Plaintiffs' core contention is that Tilles failed to submit sufficient evidence in support of his motion for summary judgment to shift the burden to them. As we explain, plaintiffs

are incorrect and their remaining claims of error are unpersuasive.

### 3.4.1. The court properly excluded the expert physician's declaration proffered by plaintiffs.

As noted, the court excluded the expert declaration offered by plaintiffs in support of their opposition to Tilles's motion for summary judgment because the physician was not qualified under Health and Safety Code section 1799.110 to offer an opinion regarding the standard of care for a physician practicing emergency medicine.[6] Plaintiffs do not challenge the court's ruling on that basis. We note, however, that the court's ruling is correct. Plaintiffs were required to provide "expert medical testimony only from physicians and surgeons who have had substantial professional experience within the last five years while assigned to provide emergency medical coverage in a general acute care hospital emergency department." (Health & Saf. Code, § 1799.110, subd. (c).) Their medical expert, however, indicated only that she is "a medical doctor and general surgeon." Her curriculum vitae states that her current practice (from 1998 to the present) is "Staff Surgeon—General, Breast and Advanced Laparoscopic Surgery" at Southern California Permanente Medical Group in Irvine, California. Neither the expert's

---

[6] Health and Safety Code section 1799.110, subdivision (c), provides: "In any action for damages involving a claim of negligence against a physician and surgeon providing emergency medical coverage for a general acute care hospital emergency department, the court shall admit expert medical testimony only from physicians and surgeons who have had substantial professional experience within the last five years while assigned to provide emergency medical coverage in a general acute care hospital emergency department … ."

declaration nor her curriculum vitae indicates that she has had any specific training or experience in emergency medicine at any time during her medical career.

Plaintiffs essentially concede the point as to their expert's opinions relating to the standard of care. They contend, however, that the declaration should have been admitted for purposes of establishing causation. We reject this argument because, as we explain *post*, plaintiffs have failed to establish any dispute of material fact which would support a finding that Tilles breached the standard of care. Accordingly, even if the court erred by excluding the declaration for all purposes, any error was not prejudicial. (Cal. Const., art. VI, § 13 [judgment may not be reversed on appeal unless "after an examination of the entire cause, including the evidence," it appears the error caused a "miscarriage of justice"].)

### 3.4.2.  Plaintiffs fail to demonstrate the existence of a dispute of material fact.

Plaintiffs urge throughout their brief that disputes of material fact exist. They rely mainly on the declaration of their physician expert for that proposition. But, as just explained, the court excluded that declaration in its entirety and, as to the issue of standard of care, plaintiffs have not challenged the court's ruling. It is improper for plaintiffs to rely on evidence properly excluded by the court. (See, e.g., *Toho-Towa Co., Ltd. v. Morgan Creek Productions, Inc.* (2013) 217 Cal.App.4th 1096, 1105–1106 [noting party on appeal may not rely on excluded evidence absent a successful challenge to the trial court's evidentiary ruling].)

Plaintiffs also appear to contend that their declarations, submitted in opposition to Tilles's motion for summary judgment, create disputes of material fact. Specifically, although Tilles's

records reflect that Dee Ann told him she had stopped taking an anti-seizure medication, Dee Ann disputed that fact in her declaration. Plaintiffs characterize this fact as "foundational" and suggest that Tilles's medical expert based his opinion on this disputed fact, rendering his "entire opinion … irrelevant."

To defeat a defense motion for summary judgment, a plaintiff cannot simply demonstrate that a fact is disputed. Instead, a plaintiff must show that the dispute of fact is *material*, i.e., is critical or central to the claim at issue. (See *Aguilar, supra*, 25 Cal.4th at p. 850 ["There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof."]; *Choochagi v. Barracuda Networks, Inc.* (2020) 60 Cal.App.5th 444, 453.)

Plaintiffs have not explained how Dee Ann's compliance or noncompliance regarding the prescribed anti-seizure medication relates to Tilles's medical care as it concerns her subsequently diagnosed infection. They did not, for example, offer admissible expert testimony indicating that if Dee Ann reported that she had been compliant with her anti-seizure medication, Tilles should have pursued a different course of diagnosis or treatment, or should have suspected an infection. In other words, plaintiffs do not connect the purported factual dispute to the central, material issue in this case.

Plaintiffs make similar claims regarding Dee Ann's purported fever, nausea, and vomiting. Although Tilles's notes indicate Dee Ann was not exhibiting those symptoms, both Dee Ann and Brian declared to the contrary. As before, however, plaintiffs do not explain how Dee Ann's symptoms relate to

16

Tilles's medical care nor do they connect those facts in any way to her subsequently diagnosed infection. They did not offer admissible expert testimony indicating that if Dee Ann had been suffering from a fever accompanied by nausea and vomiting, Tilles should have altered his diagnosis, prescribed a different treatment, or should have suspected an infection. Again, plaintiffs do not connect the purported factual dispute to the central, material issue in this case.

### 3.4.3. Plaintiffs' remaining arguments lack merit.

Plaintiffs argue at length that the absence of medical expert testimony supporting their case is immaterial. They urge, citing both the common knowledge doctrine and the principle of res ipsa loquitur, that medical expert testimony is not required where the circumstances of the injury suggest that the injury was likely the result of a simple negligent act, rather than a course of treatment involving medical judgment beyond the common knowledge of a layperson.

We reject this argument because plaintiffs failed to raise it in opposition to Tilles's motion for summary judgment. (See, e.g., *Sea & Sage Audubon Society, Inc. v. Planning Com.* (1983) 34 Cal.3d 412, 417 [noting " 'issues not raised in the trial court cannot be raised for the first time on appeal' "].)

Plaintiffs also repeatedly claim that Tilles failed to produce sufficient evidence to shift the burden of proof to them. For example, plaintiffs claim that Tilles's separate statement did not "provide[ ] a proper basis for [his] request for summary judgment, and the trial court committed reversible error by allowing the motion to go forward when Tilles … clearly had not provided [a] competent statement[ ] of facts to support adjudication of the issues presented. Moreover, the separate statements were based

upon conclusory [d]eclarations." In a similar vein, plaintiffs suggest that the separate statement was not "supported by competent evidence, but rather, by [a] self-serving [d]eclaration[ ] consisting of hearsay and conclusions of law, which [was] patently insufficient to satisfy the evidentiary requirements of CCP § 437c, and shift the burden of proof to [plaintiffs.]"

In claiming that Tilles's motion for summary judgment was not supported by sufficient evidence, plaintiffs make only broad assertions that the evidence was incompetent, without any analysis of the evidence submitted by Tilles. As discussed *ante*, however, Tilles submitted a detailed declaration by a physician and expert in emergency medicine describing the clinical findings Tilles made as well as his decisions to request consultations, diagnostic tests, and imaging. The expert's conclusions that Tilles met the standard of care and did not cause or contribute to Dee Ann's infection are well supported.[7] To show that such evidence failed to shift the burden to them, plaintiffs needed to do more than make a bare assertion that the supporting evidence was incompetent. Instead, they were required to demonstrate through reasoned argument and citations to relevant evidence and legal authority *why* the evidence was incompetent. (See *Dietz v. Meisenheimer & Herron* (2009) 177 Cal.App.4th 771, 799 [if an

---

[7] Citing *Kelly v. Trunk* (1998) 66 Cal.App.4th 519, plaintiffs argue that "an expert's bare conclusion is insufficient to support summary judgment, just as it would be insufficient at trial." Indeed, the court stated that "an opinion unsupported by reasons or explanations does not establish the absence of a material fact issue for trial, as required for summary judgment." (*Id*. at p. 524.) This case is inapplicable because both Tilles's and Badiei's experts disclosed the materials relied upon as well as the factual bases and reasons for their opinions.

18

appellant fails to support a claim with reasoned argument and citations to authority we may treat that claim as waived].) Plaintiffs fail to do so, relying instead on rhetoric and evidence properly excluded by the court.

Finally, we reject plaintiffs' claim that the court erred in overruling their objections to Dr. Barcay's declaration. Plaintiffs do not discuss any specific objection nor do they identify any particular impropriety in Dr. Barcay's declaration. Again, they rely solely on broad accusations unsupported by facts, law, or coherent reasoning. Accordingly, we reject this argument as well.

### 3.5. Because the negligence cause of action fails, the loss of consortium claim also fails.

It is well-settled that "an unsuccessful personal injury suit by the physically injured spouse acts as an estoppel that bars the spouse who would claim damages for loss of consortium." (*Meighan v. Shore* (1995) 34 Cal.App.4th 1025, 1034–1035; see also *Chavez v. Glock, Inc*. (2012) 207 Cal.App.4th 1283, 1315–1316; Haning et al., Cal. Practice Guide: Personal Injury, ¶ 3:2413.) Because we conclude plaintiffs' negligence cause of action fails, we must also conclude the cause of action for loss of consortium fails.

### 4. The court properly granted summary judgment in favor of Badiei.

### 4.1. Plaintiffs' Complaint

Plaintiffs allege that on November 30, 2015, Dee Ann was admitted to Simi Valley Hospital by Badiei and subsequently treated by him until she was discharged on December 11, 2015. She further alleges that Badiei's failure to diagnose and treat an infection fell below the standard of care, resulting in her injury.

19

### 4.2. Badiei's Evidence

As the moving party, Badiei had the initial burden to show that one or more elements of the cause of action cannot be established, or that there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subd. (o); see *Jones, supra,* 230 Cal.App.4th at p. 945.) Like Tilles, Badiei focused on standard of care and causation in his motion for summary judgment.

In support of his motion, Badiei submitted a declaration by a board-certified internist, Dr. Jeffrey Salberg. Dr. Salberg reviewed Dee Ann's medical records from Providence Saint Joseph Medical Center, Simi Valley Hospital, Adventist Health Physicians Network, Keck Hospital of USC, and Dee Ann's neurosurgeon. He provided a detailed assessment of Badiei's interactions with and treatment of Dee Ann while she was hospitalized at Simi Valley Hospital from November 30, 2015 to December 11, 2015, including Badiei's reliance on appropriate specialists and his discharge of Dee Ann for the purpose of transferring her to USC Keck Medical Center for a higher level of care.

Dr. Salberg opined that Badiei's care was appropriate and complied with the standard of care at all times during her stay at Simi Valley Hospital. He also stated that Dee Ann's blood test results did not indicate or reveal an infection. Further, Dr. Salberg opined that, to a reasonable degree of medical probability, nothing Badiei did or did not do caused or contributed to Dee Ann's injuries, including an infection. Specifically, he noted that Dee Ann's white blood cell count remained within normal range, she did not have a fever, and her other symptoms related to a seizure disorder. In sum, there was

20

no reason for Badiei to suspect that Dee Ann had or was developing an infection during her hospital admission.

We agree with the court that this evidence was sufficient to shift the burden to plaintiffs.

### 4.3. Plaintiffs failed to oppose the motion for summary judgment.[8]

As noted, plaintiffs did not submit a brief or separate statement in opposition to Badiei's motion for summary judgment. The absence of opposition is fatal to their claims against Badiei.

" 'Whenever the plaintiff claims negligence in the medical context, the plaintiff must present evidence from an expert that the defendant breached his or her duty to the plaintiff and that the breach caused the injury to the plaintiff.' [Citation] ' " 'When a defendant moves for summary judgment and supports his motion with expert declarations that his conduct fell within the community standard of care, he is entitled to summary judgment unless the plaintiff comes forward with conflicting expert evidence.' " ' [Citation.]" (*Sanchez, supra,* 8 Cal.App.5th at p. 153.) Because Badiei satisfied his initial burden and plaintiffs failed to submit any opposing evidence, Badiei was entitled to summary judgment as a matter of law.

### 4.4. Loss of Consortium

For the reasons set forth in section 3.5, *ante*, plaintiffs' loss of consortium claim against Badiei also fails.

---

[8] Our analysis of plaintiffs' arguments in section 3.4, *ante*, applies with equal force to Badiei's motion for summary judgment. We discuss, therefore, only the issue specific to Badiei in this section.

21

**5. Plaintiffs failed to appeal from the order awarding costs to Badiei.**

Finally, plaintiffs challenge several categories of costs awarded to Badiei. We lack jurisdiction to consider plaintiffs' arguments because the judgment did not determine Badiei's entitlement to costs and plaintiffs failed to appeal from the court's subsequent costs order. (See Eisenberg, et al., Cal. Practice Guide: Civil Appeals and Writs, ¶ 2.156.3 [noting "where the final judgment is silent as to attorney fees and costs (determines neither entitlement nor amount), the failure to separately appeal a postjudgment order awarding costs and fees is a jurisdictional bar to appellate review of the fees and costs award"]; *Norman I. Krug Real Estate Investments, Inc. v. Praszker* (1990) 220 Cal.App.3d 35, 46 ["A postjudgment order which awards or denies costs or attorney's fees is separately appealable. [Citation.] … and if no appeal is taken from such an order, the appellate court has no jurisdiction to review it. [Citation.]"].)

## DISPOSITION

The judgments are affirmed. Respondents Ira Tilles, Tilles M.D., Corporation, Pejman Badiei, and Pejman Badiei M.D., Inc., shall recover their costs on appeal.


## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


LAVIN, Acting P. J.

WE CONCUR:


EGERTON, J.


VIRAMONTES, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

23