Filed 3/27/24  Baykhurazov v. FriendFinder Networks CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| JAKHONGIR BAYKHURAZOV,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>FRIENDFINDER NETWORKS, INC. et al.,<br><br>    Defendants and Respondents. | H050675 & H050994<br>(Santa Clara County<br> Super. Ct. No. 20CV367170) |

Plaintiff Jakhongir Baykhurazov was employed by defendants FriendFinder Networks, Inc., and Various, Inc.  Consistent with defendants' employee handbook, defendants terminated plaintiff after he failed to report to work or contact his manager for three days.  Plaintiff sued, alleging discrimination and wrongful termination under the California Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.) on the basis of national origin and a medical disability.  He also alleged he was terminated in retaliation for engaging in whistleblowing activity, in violation of Labor Code section 1102.5.  The trial court granted summary judgment for defendants, sustaining their objections to almost all of plaintiff's evidence.  It also awarded attorney's fees to defendants.  For the reasons stated here, we will affirm the judgment and attorney's fees order.

## I.    TRIAL COURT PROCEEDINGS

According to the complaint, plaintiff is of "Asian/Soviet Union de[s]cent, national origin from Uzbekistan."  He worked for defendants in 2018 and 2019.  The complaint

alleges plaintiff's manager Nadia Lan "exhibited bias, prejudice and disparate treatment towards Plaintiff and other Russian-speaking people of Soviet Union origin." Lan allegedly "constantly overloaded" plaintiff with projects. She also "harassed and degraded" plaintiff in front of coworkers. The complaint further alleges plaintiff "learned from another employee" that chief executive officer Jonathan Buckheit "had lied under oath during testimony in front of the SEC and FTC." Plaintiff "notified his superiors" about that alleged wrongdoing. Defendants terminated plaintiff on February 13, 2019.

The complaint alleges eight causes of action: discrimination and harassment (Gov. Code, § 12940 et seq.); failure to prevent discrimination and harassment (Gov. Code, § 12940 et seq.); unlawful retaliation violating public policy (Lab. Code, §§ 98.6, 203, 232, 232.5, 1102.5); intentional infliction of emotional distress; wrongful termination; retaliation (under Gov. Code, § 12650); retaliation (under Lab. Code, § 1102.5, subd. (b)); and failure to engage in the interactive process (Gov. Code, § 12940, subd. (n)).[1]

## A. SUMMARY JUDGMENT MOTION AND SUPPORTING EVIDENCE

Defendants moved for summary judgment, offering evidence to support their argument that plaintiff's demotion and termination were based on legitimate, nondiscriminatory, and nonretaliatory factors. That evidence included an employee handbook with an acknowledgement of receipt signed by plaintiff. In a section on attendance and punctuality, the handbook states: "Excessive absences or tardiness subtracts from your overall job performance and usually adds to the workload of other employees. Therefore, if your unexcused absence or tardiness record becomes habitual or excessive, you may be subject to disciplinary action up to and including termination of employment." The handbook continues: "On the third day of not reporting to work or

---

[1] Plaintiff later filed a request to dismiss the intentional infliction of emotional distress cause of action, as well as any allegation in any cause of action based on Labor Code sections 232 and 232.5.

2

not properly calling in, the absence will be considered job abandonment and you may be terminated." In another section regarding "PTO Scheduling and Approval," the handbook states, "Employees are reminded that pursuant to Company policies and procedures, employees who are absent for more than two (2) consecutive days without any contact with their supervisors and/or the Human Resources department will be deemed to have voluntarily resigned." Included in a list of prohibited conduct in the handbook is, "Insubordination, including but not limited to, failure or refusal to obey the orders or instructions of a supervisor or member of management."

Defendants filed a declaration from their chief executive officer Jonathan Buckheit, which described plaintiff's performance and attached several exhibits. Those exhibits included a March 2018 performance review at the end of plaintiff's 90-day probationary review, which indicated he had room for improvement related to cooperation, including remaining "neutral as a project manager," "establishing a good rapport," and "[t]aking feedback into consideration." Buckheit's declaration described a personnel dispute between plaintiff and his direct supervisor, Nadia Lan. Several e-mail messages about the dispute are attached to Buckheit's declaration. Plaintiff complained to human resources about Lan's May 2018 decision to reprimand him for failing to attend a meeting. Plaintiff also copied other employees on multiple e-mail messages about the incident, including one in which he informed Lan she "really should apologize for publicly attacking me in front of my colleagues." Lan's supervisor instructed plaintiff twice by e-mail that the e-mail thread "is not the forum for you to discuss personal issues." Buckheit instructed plaintiff to stop admonishing Lan "in front of so many people on a cc list." Plaintiff then sent another e-mail complaining about Lan's "inappropriate toxic behavior," and Buckheit informed plaintiff the "attacks in your e-mails have gone far enough, too far, and you need to stop now." At a meeting with human resources, plaintiff asked that Buckheit supervise him; Buckheit denied the request.

3

Following the meeting with human resources, defendants issued a final warning notice to plaintiff in June 2018. The notice described plaintiff's "[i]nappropriate communication addressing personal issues with [a] manager in [an] email thread ... with other employees carbon copied." Plaintiff had continued the discussion of the personal issue even after being instructed to stop. Defendants reduced plaintiff's salary by $10,000 and informed him that "future infractions would result in further disciplinary actions up to termination."

Regarding plaintiff's attendance at work, a June 2018 e-mail from a human resources manager informed him that "it is the company's policy that all employees need a doctor's note if they are out for more than 3 days, and you acknowledged that next time you will be sure to get the note." Plaintiff worked only five days in January 2019; other than one planned vacation day, he took the remaining business days as sick time. Plaintiff was reminded by the human resources manager via e-mail that he needed to inform Lan or human resources about calling in sick. The same e-mail notified him about his rights to a leave of absence under the Family Medical Leave Act and the California Family Rights Act.

Plaintiff returned to work in February 2019 with a note from his doctor that stated he was "ok to return to work at full capacity as of January 30, 2019." It did not identify the medical reason for his absences in January. An e-mail from a human resources manager to plaintiff on February 9, 2019 refers to a conversation about "FMLA/CFRA leave" and "disability insurance that is available through the state;" plaintiff had indicated by e-mail on February 8 that he was "not interested in taking any time off."

Plaintiff did not report to work on February 11, 12, or 13. Lan provided a "final warning" to plaintiff by e-mail on February 12, informing him that if he was "absent from work again without any reasons, you will be terminated immediately." Plaintiff was terminated on February 13 by e-mail from the human resources manager, noting that under "company policy, on the third day of not reporting to work or not properly calling

4

in, the absence will be considered job abandonment." It appears the e-mail was sent at 3:20 p.m. local time. Plaintiff responded by e-mail just over an hour later, indicating he would "see you in SEC, FTC, and other federal courts."

## B. PLAINTIFF'S OPPOSITION AND EVIDENCE

Plaintiff opposed summary judgment and filed declarations from himself, his counsel (authenticating various exhibits), and a human resources professional. We summarize here only the evidence the trial court considered in deciding the summary judgment motion—i.e., the evidence for which the trial court did not sustain defense objections. (We discuss in Part II, *post*, the parties' arguments about the e-mail from Buckheit that the trial court excluded.)

Plaintiff declared that Lan "started overloading [him] with assignments" after he reported illegal activities to Buckheit. (The trial court sustained objections to the paragraphs describing the subject matter of those alleged illegal activities.) Plaintiff declared that Lan instructed him to schedule a meeting in May 2018 on a topic with which he was unfamiliar. Plaintiff did not attend the meeting because it was not assigned to him on defendants' project-tracking ticketing system. Lan "stormed into my workplace and yelled and screamed at me in front of all my peers for not attending the meeting." After plaintiff lodged a complaint about Lan to human resources, a human resources representative "apologize[d] for" Lan. Plaintiff "did not feel that [he was] being taken seriously as from the way [the representative] spoke to" him. Plaintiff admitted he "expressed [his] frustration in the e-mail" after the incident. He acknowledged receiving a final warning as a result of the e-mail exchange.

Plaintiff declared that Lan assigned him to organize the documents by his "predecessor, Tatiana, who was also from a Russian speaking country." Lan complained about her organization, but plaintiff found that "the documents were actually well-organized already." The foregoing led plaintiff to think that because Lan "was never

5

displaying such animus towards employees of different origin than I and Tatiana were, there is a connection between the treatment I experience and my national origin."

Plaintiff declared that "animus towards me also manifested itself in the treatment I received when I had plantar fasciitis — my left foot was hurting and stepping on it was causing me pain." He stated, "Seeing me limping was not enough for Ms. Lan to provide me with at least some days of working from home."

Plaintiff declared he was "assigned up to three times more projects than other managers." He attached a screenshot "reflecting the number of projects assigned to me and to other project managers in Q3, 2018." Out of "59 projects [plaintiff] was assigned 18, when other project managers were assigned anything from 6 to 11 projects."

Plaintiff presented a declaration by Victor Barajas, whom he retained as a human resources expert. The trial court sustained defendants' objections to most content in the Barajas declaration. The remaining information in the declaration mostly summarizes defendants' employee handbook and restates factual information already contained in plaintiff's declaration. Barajas declared that, "Collectively, it appears Friend Finder Network is a diverse organization that hires staff of different national origins and ethnic backgrounds." He noted the allegations of discrimination did "not appear to be levied against the organization as a whole but rather one individual," Lan.

Certain evidence attached to plaintiff's counsel's declaration bears on the appellate arguments. Plaintiff lodged an excerpt from the deposition of Dimitar Boyn, who worked with plaintiff on one project. Boyn testified that plaintiff was "probably the best project manager that I have witnessed in the company." When asked whether defendants' policies "allowed any employee to be terminated for missing two consecutive days of work?" Boyn responded, "I'm not sure about that." When asked, "To your knowledge, how many consecutive days of work can an employee miss before they are subject to termination?" he responded, "My expectation is three." He appeared to clarify his answer with, "I cannot justify. I do not have clear," but the deposition excerpt ends in the

6

middle of the sentence. Plaintiff also lodged a one-page excerpt from what appears to be a direct messaging conversation between Lan and a human resources manager. The individuals are discussing an individual who is only described as "he," but who is presumably plaintiff. A message with a January 2019 date stamp from the human resources manager states she informed "him" that "if we don[']t hear from an employee for 3 days in a row, this is no show no call for work." Plaintiff lodged a January 30, 2019, e-mail between the human resources manager and other employees of defendants (not including plaintiff). In it the manager indicates she told plaintiff "he needs to ask his doctor if and when he can return to work and to get a doctor's note to clear his return." The manager excerpted part of the employee handbook about unexpected illnesses, which states for "Unexpected Time Away that lasts 3 or more consecutive days away from work, employees will be required to provide a doctor's statement verifying the need for time away." Also lodged was an excerpt from the employee handbook indicating that "Employees who miss three (3) or more consecutive unscheduled days due to their own illness are required to present a doctor's release to the Human Resources Department that confirms they are fit to return to work and limitations and/or restrictions, if any."

## C. ORDER GRANTING SUMMARY JUDGMENT

The trial court granted summary judgment by written order after a hearing. The court concluded that plaintiff did not demonstrate the existence of a triable issue of material fact as to his Government Code section 12650 (False Claims Act) cause of action because no party is a government entity and no government funds were at issue. As to the remaining causes of action, the court found defendants met their burden to demonstrate that plaintiff's demotion and termination were based on legitimate, nondiscriminatory factors. The court further found defendants met their initial burden to demonstrate that plaintiff did not "provide notice of his purported disability or thereafter [make] a request for accommodation" for that disability.

7

The trial court concluded that plaintiff did not demonstrate the existence of a triable issue of material fact about any cause of action. The court noted there was no evidence plaintiff ever complained about retaliation or discrimination before he was terminated. The court found that neither plaintiff's assertions about the possible mistreatment of prior coworker Tatiana nor the fact that he was the only project manager of Russian language origin demonstrated any sort of discriminatory animus. The court found that plaintiff's termination complied with defendants' employee handbook because plaintiff did not report to work for three consecutive days and he presented no evidence of any attempt to contact his supervisor. The court also noted consistency with the handbook provision that two consecutive days without any contact with a supervisor is considered voluntary resignation. (Although the trial court quoted the voluntary resignation language from a later supplement to the employee handbook, we note the same language appears in the June 2016 handbook that plaintiff acknowledged receiving.) The court found plaintiff did not demonstrate the existence of a triable issue of material fact about discrimination based on a medical disability because there was no evidence plaintiff ever requested an accommodation or told his supervisor about any disability. Those failures also meant plaintiff did not demonstrate the existence of a triable issue of material fact about defendants' alleged failure to engage in the interactive process. Finally, the trial court concluded plaintiff did not demonstrate the existence of a triable issue of material fact about alleged retaliation for whistleblowing activity to Buckheit because the "evidence upon which Plaintiff relies is inadmissible hearsay, speculative, lacks personal knowledge and foundation."

### D. ATTORNEY'S FEES MOTION AND ORDER

Defendants moved for over $68,000 in attorney's fees under Government Code section 12965, subdivision (c)(6). The trial court granted the motion in part, finding that plaintiff's complaint was groundless because plaintiff "failed to put forward any facts in support of his FEHA complaint." After considering plaintiff's ability to pay, the court

8

awarded defendants $25,000 in attorney's fees. Defendant appealed from the judgment (case No. H050675) and separately appealed the fee award (case No. H050994). We ordered the appeals considered together for purposes of briefing, oral argument, and disposition.

## II.    DISCUSSION

Summary judgment is appropriate when there are no triable issues of any material fact such that the moving party is entitled to judgment as a matter of law on all causes of action. (Code Civ. Proc., § 437c, subd. (c); *Jones v. Wachovia Bank* (2014) 230 Cal.App.4th 935, 945 (*Jones*).) We review an order granting summary judgment de novo, applying a three-step analysis. (*Jones*, at p. 945; *Hamburg v. Wal-Mart Stores, Inc.* (2004) 116 Cal.App.4th 497, 503.) First, we identify the causes of action framed by the pleadings. Second, we review whether the defendant as the moving party carried its burden of showing the causes of action have no merit because one or more elements cannot be established or an affirmative defense precludes the cause of action. (Code Civ. Proc., § 437c, subd. (o); *Murphy v. Allstate Ins. Co.* (1978) 83 Cal.App.3d 38, 41 [moving party must show causes of action "are entirely without merit on any legal theory"].) Third, if we find the defendant has made a prima facie showing that it is entitled to judgment as a matter of law, the burden of production shifts to the plaintiff and we review whether the plaintiff has provided evidence of a triable issue of material fact. (Code Civ. Proc., § 437c, subd. (p)(2); *Jones*, at p. 945.) A triable issue of material fact exists if "the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 845.) "Thus, a party 'cannot avoid summary judgment by asserting facts based on mere speculation and conjecture, but instead must produce admissible evidence raising a triable issue of fact.' " (*Jones,* at pp. 945–946.)

9

## A. EVIDENCE OF THE BUCKHEIT E-MAIL WAS PROPERLY EXCLUDED

Plaintiff argues the trial court erred by excluding an e-mail written by defendants' CEO, Jonathan Buckheit. We review a trial court's evidentiary rulings on summary judgment for abuse of discretion. (*Jones*, *supra*, 230 Cal.App.4th at p. 951.) It is the appellant's burden to affirmatively demonstrate that the trial court erred in making an evidentiary ruling; failure to do so will forfeit the challenge. (*City of Crescent City v. Reddy* (2017) 9 Cal.App.5th 458, 463 (*Reddy*).)

Plaintiff lodged an e-mail sent on June 4, 2018 from Buckheit to two of defendants' employees with the subject line, "Write-up for Andrey." The body of the e-mail reads: "Last month, John Baykhurazov reported that Andrey told him he had been 'advised' that: [¶] • Jon Buckheit had lied to the FTC [¶] • Jon Buckheit would not be CEO after the FTC took action against FFN [¶] • Board members disliked Jon Buckheit. [¶] Upon being confronted by Dimitar, Ali, Bogdan and Jon, Andrey admitted that he had said these allegations to John, and been told the foregoing by Diana Ballou. Diana Ballou has denied saying any of this to Andrey. Diana Ballou also denied that Jon Buckheit had ever lied to the FTC. [¶] The foregoing constitutes grossly unprofessional conduct on the part of Andrey and this written warning will serve to document this unprofessionalism." Plaintiff included statements about the e-mail in his declaration opposing the summary judgment motion. The trial court sustained defendants' objections to the declaration statements about the e-mail (and, by extension, the e-mail itself), finding that the "evidence upon which Plaintiff relies is inadmissible hearsay, speculative, lacks personal knowledge and foundation."

Plaintiff does not challenge the trial court's findings that the evidence was speculative, lacked personal knowledge, and lacked foundation. Plaintiff challenges only the finding that the evidence was inadmissible hearsay. By not affirmatively demonstrating that all bases for the trial court's decision were in error, plaintiff has forfeited his challenge to the trial court's ruling. (*Reddy*, *supra*, 9 Cal.App.5th at p. 463.)

10

Plaintiff's appellate arguments about hearsay are also deficient.  Plaintiff argues the e-mail was admissible as a statement by a party opponent.  (Evid. Code, § 1220.)  But the e-mail contains multiple layers of hearsay, and the exception plaintiff identifies could satisfy, at most, only one layer.  (*Alvarez v. Jacmar Pacific Pizza Corp.* (2002) 100 Cal.App.4th 1190, 1205 ["When multiple hearsay is offered, an exception for *each* level of hearsay must be found in order for the evidence to be admissible."]; Evid. Code, § 1201.)  Plaintiff also argues the e-mail was admissible, not for its truth but rather as evidence that he reported illegal activity to a superior.  Plaintiff forfeited that ground for admitting the evidence by not raising it in the trial court.  (See *Perez v. Grajales* (2008) 169 Cal.App.4th 580, 591–592 ["[A]rguments raised for the first time on appeal are generally deemed forfeited"].)  Plaintiff states in his reply brief, without citation to the record, that he "request[ed] at the hearing for the Motion for Summary Adjudication to consider the letter from Respondent's CEO not for the truth of the matter asserted, but for the alternative purpose."  We have reviewed the reporter's transcript from that hearing and find no reference to plaintiff arguing the e-mail should be considered for a non-truth purpose.  Nor do the record references plaintiff cites to show he "raised this [not-for-truth] theory at the hearing on the motion for attorney's fees and costs" make any mention of that theory.

Plaintiff has not affirmatively demonstrated an abuse of discretion in excluding evidence related to the e-mail from Buckheit.

## B.  NO TRIABLE ISSUE OF FACT ABOUT WHISTLEBLOWER RETALIATION

Plaintiff argues a triable issue of material fact exists about whether defendants violated Labor Code section 1102.5.  Subdivision (b) of that section provides in relevant part:  "An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the

authority to investigate, discover, or correct the violation or noncompliance." (Lab. Code, § 1102.5, subd. (b).) The fatal defect in plaintiff's argument is that it is based solely on the Buckheit e-mail that we have found the trial court properly excluded.[2] As there was no admissible evidence presented to the trial court to show plaintiff engaged in whistleblowing activity, the court correctly found no triable issue of material fact related to an alleged Labor Code section 1102.5 violation.

## C. No Triable Issue of Fact About FEHA Discrimination Claim

A three-stage burden-shifting test applies in the trial court for discrimination claims under FEHA. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 354 (*Guz*).) The plaintiff has the initial burden to establish prima facie discrimination, which requires at a minimum " ' "actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were 'based on a [prohibited] discriminatory criterion.' " ' " (*Id.* at p. 355.) If the plaintiff makes that showing, the employer must produce admissible evidence to show that its "action was taken for a legitimate, nondiscriminatory reason." (*Id.* at pp. 355–356.) And if the employer sustains its burden, the plaintiff then has "the opportunity to attack the employer's proffered reasons as pretexts for discrimination, or to offer any other evidence of discriminatory motive." (*Id.* at p. 356.)

The complaint alleged plaintiff was discriminated against "on account of his race and medical disability." Plaintiff's appellate arguments focus on four allegedly discriminatory actions: a June 2018 salary reduction; assignment of a disproportionate share of work; failure to accommodate a physical disability; and termination.

---

[2] Plaintiff alleged in the complaint that he notified defendants on February 11, 2019 that "he planned to make a complaint to the government about [defendants'] illegal activities." But he never presented admissible evidence to support that allegation.

### 1. Salary Reduction

Defendants' evidence supported a finding that plaintiff's salary was reduced based on a legitimate, nondiscriminatory reason—plaintiff's insubordination in refusing to obey instructions from human resources and the CEO. Plaintiff's March 2018 performance review noted he had room for improvement in interpersonal interactions, including remaining "neutral as a project manager," "establishing a good rapport," and "[t]aking feedback into consideration." Following the May 2018 incident when Lan reprimanded plaintiff in front of other employees for not attending a meeting, defendants agreed to plaintiff's request for a meeting with human resources. Rather than addressing the personnel issue with human resources, plaintiff chose to copy other employees on multiple e-mail messages about the incident, including one in which he informed Lan she "really should apologize for publicly attacking me in front of my colleagues." Plaintiff was admonished twice by Lan's supervisor that the e-mail thread "is not the forum for you to discuss personal issues." Defendants' CEO also instructed plaintiff not to "admonish your boss in front of so many people on a cc list." Plaintiff continued the same conduct, leading to another e-mail from the CEO informing plaintiff that the "attacks in your e-mails have gone far enough, too far, and you need to stop now." The written final warning notice leading up to the June 2018 salary reduction was based on plaintiff's "[i]nappropriate communication addressing personal issues with [a] manager in [an] email thread ... with other employees carbon copied" as well as plaintiff ignoring an instruction to stop discussing personal issues on the e-mail thread.

Plaintiff offered no admissible evidence suggesting defendants' proffered reason for the salary reduction was merely a pretext for discrimination. The trial court correctly concluded plaintiff had not produced admissible evidence raising a triable issue of fact about discrimination in the salary reduction.

13

## 2. Plaintiff's Workload

Plaintiff declared that he was overloaded with assignments by Lan. He stated he was assigned "up to three times more projects than other project managers." He attached a screenshot of the number of projects assigned to him and other project managers for the third quarter of 2018. He also stated he was the only project manager "of Soviet national origin." Defendants did not submit conflicting evidence.

The foregoing does not satisfy plaintiff's initial burden to establish a prima facie case of discrimination. An employer's decision to assign one project manager more work than others, standing alone, does not raise an inference that the difference in workload was more likely than not based on a discriminatory criterion. (See *Guz*, *supra*, 24 Cal.4th at p. 355.) Speculation that the workload decision was based on national origin discrimination does not satisfy the initial burden. The absence of evidence supporting a prima facie case of discrimination distinguishes this case from *Galvan v. Dameron Hospital Assn.* (2019) 37 Cal.App.5th 549, where a supervisor "singled out unit coordinators who spoke English as a second language for criticism and often focused her comments on their accents and their supposed poor English language skills." (*Id.* at p. 555.)

Plaintiff contends Lan's mistreatment of another Russian-speaking employee indicates bias against Russian speakers more generally. But the only evidence plaintiff offered on this point was his own declaration that Lan complained documents left by plaintiff's predecessor Tatiana were disorganized. Plaintiff declared that he found the documents to be well organized, but here again, he provided no evidence to raise an inference that Lan's opinion about the former employee was more likely than not based on a discriminatory criterion.

Plaintiff relies on paragraph 12 of the Barajas declaration, arguing it "was not excluded by the Trial Court." Plaintiff states the trial court "sustained some objections to the declaration, including paragraphs 1-11." But the trial court actually sustained

14

"*objections* 1-11 to the declaration of Victor Barajas," corresponding to paragraphs five through nine and 11 through 16 of the declaration. As relevant to this point, objection seven addressed the opinion testimony in paragraph 12 of the Barajas declaration. With the excluded testimony removed, paragraph 12 reads: "Therefore, even though discrimination by the company as a whole would seem far stretched, given the overall diverse workforce of the Defendant."

The trial court correctly concluded plaintiff failed to produce admissible evidence raising a triable issue of fact about discrimination in the workload distribution among project managers.

### 3. Disability Accommodation

Plaintiff argues he "suffered a disparate treatment when he was not provided an accommodation, i.e. permission to work from home, when his left foot was in pain and he was limping."

"FEHA provides an independent cause of action for an employer's failure 'to make reasonable accommodation for the known physical or mental disability of an applicant or employee' unless the accommodation would cause 'undue hardship' to the employer." (*Soria v. Univision Radio Los Angeles, Inc.* (2016) 5 Cal.App.5th 570, 597–598, quoting Gov. Code, § 12940, subd. (m)(1).) However an "adverse employment decision cannot be made 'because of' a disability, when the disability is not known to the employer." (*Brundage v. Hahn* (1997) 57 Cal.App.4th 228, 236.) While knowledge of a disability "can be inferred from the circumstances, knowledge will only be imputed to the employer when the fact of disability is the only reasonable interpretation of the known facts. 'Vague or conclusory statements revealing an unspecified incapacity are not sufficient to put an employer on notice of its obligations.' " (*Id.* at p. 237.)

Plaintiff declared that "animus towards me also manifested itself in the treatment I received when I had plantar fasciitis — my left foot was hurting and stepping on it was

15

causing me pain." He stated, "Seeing me limping was not enough for Ms. Lan to provide me with at least some days of working from home."

The foregoing does not satisfy plaintiff's initial burden to show that defendants knew about his physical disability. Contrary to plaintiff's appellate contention that "he complained about needing to work from home," he presented no evidence showing that he informed Lan of any medical disability or requested any accommodation from her. His declaration merely states that Lan saw him limping. That observation is insufficient to impute knowledge of a disability requiring accommodation. Plaintiff's contention that defendants did not provide evidence that he "failed to request such accommodation from his Manager Nadia Lan verbally" misses the point: Plaintiff bore the initial burden to demonstrate that defendants knew about his disability. Having failed to do so, the trial court correctly concluded that plaintiff failed to produce admissible evidence raising a triable issue of fact about discrimination on the basis of physical disability.

### 4. Termination

Plaintiff argues he was terminated in violation of defendants' termination policy. The employee handbook that plaintiff acknowledged receiving states: "On the third day of not reporting to work or not properly calling in, the absence will be considered job abandonment and you may be terminated." Another section provides a shorter window: "Employees are reminded that pursuant to Company policies and procedures, employees who are absent for more than two (2) consecutive days without any contact with their supervisors and/or the Human Resources department will be deemed to have voluntarily resigned."

Defendants satisfied their burden to produce admissible evidence showing plaintiff was terminated for a legitimate, nondiscriminatory reason (*Guz*, *supra*, 24 Cal.4th at p. 356): Plaintiff worked only five days in January 2019. He was informed that month by a human resources manager of the need to inform a supervisor or human resources on days that he called in sick. He was also notified in the same message about his rights to a

16

leave of absence under the Family Medical Leave Act and the California Family Rights Act. He was reminded of his rights under those laws again the following month. Plaintiff e-mailed the human resources manager that he was "not interested in taking any time off." Yet he did not report to work on February 11, 12, or 13. Lan provided a "final warning" to plaintiff by e-mail on February 12, informing him that if he was "absent from work again without any reasons, you will be terminated immediately." Plaintiff was terminated on February 13. Plaintiff's failure to report to work or call in on February 13 violated the employee handbook and provided a legitimate, nondiscriminatory reason for termination.

Plaintiff offers no admissible evidence to show defendants' proffered reason for the termination was merely a pretext for discrimination. He contends there is a triable issue of material fact about "the actual policy of [defendants] on the date of [plaintiff's] termination," but the company policy, reflected in the employee handbook, speaks for itself: "On the third day of not reporting to work or not properly calling in, the absence will be considered job abandonment and you may be terminated." Rather than directly addressing the policy language, plaintiff looks to other sections of the handbook and statements by defendants' employees. But the evidence he cites is consistent with the three-day policy quoted above. The section of the handbook about unexpected illnesses—stating, "Employees who miss three (3) or more consecutive unscheduled days due to their own illness are required to present a doctor's release"—addresses the separate issue of clearance to return to work; it does not discuss failure to report to work, which was defendants' reason for terminating plaintiff. The human resources manager's message to Lan that "if we don[']t hear from an employee for 3 days in a row, this is no show no call for work" is similarly consistent with the company's policy. Plaintiff also cites a supervisor's deposition testimony stating his "expectation is three" when asked, "Do you recall whether or not the policy at [Friendfinder Network] allowed any employee to be terminated for missing two consecutive days of work?" Not only is the

supervisor's testimony consistent with company policy, it merely reflects one individual's subjective understanding of the written policy.

Without citation to the record, plaintiff argues the "decision to terminate him was made on February 12, 2019 already." To the extent plaintiff is relying on Lan's e-mail to him on that date, the e-mail does not support his argument. Lan informed plaintiff that neither she nor anyone else had heard from him in two days, and she reminded him she "specifically requested you to let me know if you can't make it to the office in any forms." Lan gave him a "final warning" that if he was "absent from work again without any reasons, you will be terminated immediately." Plaintiff argues his manager Lan "started inquiring how can she fire him without consequences one month prior to his termination" and was "proactively seeking a way to terminate him, inquiring about the termination process from" the human resources manager. Plaintiff cites the single page of direct messages between Lan and the human resources manager to support the first contention, and cites nothing to support the second contention; the messages themselves support neither. Lan asks no questions in the short excerpt plaintiff presented to the trial court, and the only statements attributed to her are two answers of "Okay."

Plaintiff argues his termination was pretextual because Lan "made no effort it [*sic*] locating [plaintiff] when he was sick and out of work, even though [plaintiff] was required by [defendants] to provide emergency contact as a part of on-boarding process." But Lan's e-mail sent the day before plaintiff was terminated was an attempt to locate him. And plaintiff points to nothing in the employee handbook requiring defendants to attempt to reach an employee's emergency contact under these circumstances.

### D. NO TRIABLE ISSUE OF FACT ABOUT FEHA RETALIATION CLAIM

To "establish a prima facie case of retaliation under the FEHA, a plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the

18

protected activity and the employer's action." (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042 (*Yanowitz*).) Protected activity includes "oppos[ing] any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." (Gov. Code, § 12940, subd. (h).) A retaliation claim may also be "brought by an employee who has complained of or opposed conduct that the employee reasonably believes to be discriminatory, even when a court later determines the conduct was not actually prohibited by the FEHA." (*Yanowitz*, at p. 1043.) If an employee establishes a prima facie case, the employer must offer a legitimate, nonretaliatory reason for the adverse employment action. (*Id.* at p. 1042.) And if an employer produces a legitimate reason for the adverse employment action, the "burden shifts back to the employee to prove intentional retaliation." (*Ibid.*)

The critical shortcoming in plaintiff's FEHA retaliation claims is that he points to no admissible evidence suggesting he engaged in protected activity. Because the Buckheit e-mail was properly excluded, it could not form the basis for a retaliation claim. Plaintiff presented no evidence indicating that he informed Lan of a medical disability or formally requested any accommodation from her. And no evidence indicates plaintiff's May 2018 complaint to human resources about Lan related to any practice prohibited by FEHA. Plaintiff's e-mail states only that Lan "created a very hostile environment where she was shouting on me in front of everyone, she singled me out even though my presence in that meeting was not crucial." He complained that Lan is "incompetent in properly communicating with her subordinates and lacks management skills." Noticeably absent is any allegation that Lan's actions were motivated by discriminatory animus. Plaintiff has therefore failed to establish a prima facie case of retaliation under FEHA.

Even if plaintiff had made a prima facie showing based on his human resources complaint, defendants' evidence provided a legitimate, nondiscriminatory reason for reducing plaintiff's salary. As we have discussed, the salary reduction was based on

19

"[i]nappropriate communication addressing personal issues with [a] manager in [an] email thread ... with other employees carbon copied" and plaintiff's ignoring an instruction to stop discussing personal issues on the e-mail thread. As with the discrimination claim, plaintiff also failed to show that the nondiscriminatory basis for discipline was pretextual.

Plaintiff again tries to rely on portions of the Barajas declaration that were excluded by the trial court. He argues in his reply brief that "Paragraphs 13 through 16 of the Declaration of Human Resources Expert Victor Barajas which were not excluded by the Trial Court provided that Appellant actually had basis for his retaliation claims." But as we have noted, the trial court sustained objections to paragraphs 13 and 16 in their entirety, and sustained objections to all opinion testimony contained in paragraphs 14 and 15. After removing the excluded portions, paragraphs 14 and 15 contain two purely factual statements: "The adverse employment actions levied against [plaintiff] included a demotion in position and a reduction in yearly compensation of $10,000"; and "In an Employee Warning Notice dated 06/04/2018 indicates a reduction in rate by $10,000 due to 'inappropriate communications addressing personal issues with manager'[.]"

### E. NO ABUSE OF DISCRETION IN ATTORNEY'S FEES AWARD

A trial court deciding a FEHA case "in its discretion, may award to the prevailing party ... reasonable attorney's fees and costs, ... except that ... a prevailing defendant shall not be awarded fees and costs unless the court finds the action was frivolous, unreasonable, or groundless when brought, or the plaintiff continued to litigate after it clearly became so." (Gov. Code, § 12965, subd. (c)(6).) The trial court awarded defendants attorney's fees, finding "the suit was groundless because Plaintiff brought the suit despite having no evidence to support his claims." The court considered plaintiff's ability to pay and reduced the claimed fees to $25,000. Plaintiff challenges defendants' entitlement to fees. (He has not challenged the reasonableness of the amount awarded.)

20

We review the trial court's award of fees for abuse of discretion. (See *Robert v. Stanford University* (2014) 224 Cal.App.4th 67, 73.)

The trial court excluded almost all evidence plaintiff presented at the merits stage, and plaintiff has not demonstrated any error in the trial court's evidentiary decisions. The evidence that remains consists of factual statements in the Barajas declaration, factual statements in plaintiff's declaration, and plaintiff's speculation that defendants' decisions were motivated by discriminatory animus. Plaintiff has not demonstrated an abuse of discretion in the trial court's decision to award attorney's fees.

As he did on two other issues in this appeal, plaintiff improperly relies on information from the Barajas declaration that was excluded by the trial court. He also appears to argue on appeal, without citation to authority, that the trial court had a duty to make an "independent evaluation of evidence" when deciding the fee motion. We find the argument forfeited for lack of reasoned argument based on legal authority. (See *Tichinin v. City of Morgan Hill* (2009) 177 Cal.App.4th 1049, 1084, fn. 16.) Even entertaining the argument, we see no error in the trial court focusing on evidence that was admitted in determining the fee motion.

## III.    DISPOSITION

The judgment and the attorney's fees order are affirmed. As the prevailing parties on appeal, defendants are awarded their appellate costs. (Cal. Rules of Court, rule 8.278(a).)

21

_____

Grover, J.

**WE CONCUR:**

_____

Bamattre-Manoukian, Acting P. J.

_____

Lie, J.

H050675, H050994
*Baykhurazov v. FriendFinder Networks, Inc. et al.*